**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2023 MSPB 24**

Docket No. DC-1221-15-1168-W-1

**Iris Cooper,**

**Appellant,**

**v.**

**Department of Veterans Affairs,**

**Agency.**

August 24, 2023

Scott Oswald, Esquire, and Nicholas Woodfield, Esquire, Washington, D.C., for the appellant.

Richard Johns, Esquire, Washington, D.C., for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

**OPINION AND ORDER**

The appellant has filed a petition for review of the initial decision, which dismissed her individual right of action (IRA) appeal for lack of jurisdiction. For the reasons discussed below, we GRANT the appellant's petition for review, VACATE the initial decision, and REMAND the case to the regional office for further adjudication in accordance with this Opinion and Order.

BACKGROUND

The appellant was formerly employed by the Department of Veterans Affairs (VA or agency) as the Associate Deputy Assistant Secretary for

Acquisitions, a Senior Executive Service position, until January 2014 when she accepted a position with the Department of the Treasury.  Initial Appeal File (IAF), Tab 1 at 6, 19.  On September 18, 2015, she filed this IRA appeal alleging that the agency took various personnel actions against her in reprisal for protected disclosures she made between 2009 and 2014.  IAF, Tab 1.  In particular, she alleged that from June 2012 to December 2014, her former supervisor, the Deputy Assistant Secretary for the Office of Acquisitions and Logistics, caused the VA Office of Inspector General (VA OIG) to investigate her, dissuaded the VA OIG from abandoning its investigation, caused the VA OIG to issue a report containing false conclusions about her conduct related to a particular Government contract, and threatened that he wanted to send the report to the Department of the Treasury to ruin her career.  IAF, Tab 7 at 6, 13-15, 17-18; Tab 14 at 12.  The appellant also alleged that, following the issuance of the VA OIG report in December 2014, the Department of the Treasury conducted its own investigation regarding the allegations against her, during which time it temporarily withheld her 2014 raise and bonus.  IAF, Tab 7 at 33.  Additionally, she alleged that, also following the VA OIG report, in February 2015, the VA retroactively downgraded her 2012 performance evaluation from an Outstanding rating to an Unsatisfactory rating.  *Id.* at 35.  Finally, she alleged that her former VA supervisor removed her responsibility for approving Federal Acquisition Certification for Contracting (FAC-C) certifications for interns.  *Id.* at 8; IAF, Tab 1 at 47-48.

¶3      Without holding the appellant's requested hearing, the administrative judge issued an initial decision dismissing the appeal for lack of jurisdiction.  IAF, Tab 19, Initial Decision (ID).  The administrative judge found that the appellant failed to nonfrivolously allege that the removal of her ability to grant FAC-C certifications to interns constituted a significant change in duties, responsibilities, or working conditions because it appeared from her submissions that this job duty

arose once per year, which did not suggest that it was significant in relation to her overall duties.[1]  ID at 5-7.  Next, the administrative judge found that the VA OIG investigation, including its initiation, continuation, and ultimate report of investigation, did not amount to a personnel action under 5 U.S.C. § 2302(a)(2).  ID at 4.  He further concluded that the appellant's allegations concerning the OIG investigation did not provide a basis for Board jurisdiction because the appellant did not identify any personnel action related to the OIG investigation.  ID at 4-5.  Although he considered the appellant's claim that, in March 2015, following the issuance of the VA OIG report in December 2014, the VA retroactively downgraded her 2012 performance evaluation, he found that she failed to prove that she exhausted this personnel action before the Office of Special Counsel (OSC).  *Id.*  Finally, the administrative judge found that the appellant's allegation that the agency threatened to remove her from her position at the Department of the Treasury failed to constitute a nonfrivolous allegation that she was subjected to a personnel action because the VA lacked the authority to remove her from her position at another agency.  ID at 5 n.2.

¶4        The appellant has filed a petition for review.  Petition for Review (PFR) File, Tab 1.  The agency has opposed the appellant's petition, and the appellant has filed a reply.  PFR File, Tabs 3-4.

---

[1] The appellant does not challenge this finding on review, and we discern no error in the administrative judge's analysis, considering the standard set forth in *Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, which was decided after the issuance of the initial decision.  *See Skarada*, 2022 MSPB 17, ¶¶ 15-16 (holding that to constitute a significant change under 5 U.S.C. § 2302(a)(2)(A)(xii), an agency action must have practical and significant effects on the overall nature or quality of an employee's working conditions, responsibilities, or duties).

## ANALYSIS

<u>The appellant has established that she exhausted before OSC some, but not all, of her alleged personnel actions.</u>

¶5    Under 5 U.S.C. § 1214(a)(3), to establish Board jurisdiction over an IRA appeal, an appellant must prove by preponderant evidence that she exhausted administrative remedies with OSC before seeking corrective action from the Board. *Chambers v. Department of Homeland Security*, 2022 MSPB 8, ¶ 10. The substantive requirements of exhaustion are met when an appellant has provided OSC with a sufficient basis to pursue an investigation. *Id.* The purpose of the exhaustion requirement is to give OSC the opportunity to take corrective action before involving the Board in the case. *Id.* Thus, the Board's jurisdiction in an IRA appeal is limited to those issues that have been raised with OSC. *Id.* An appellant, however, may give a more detailed account of the whistleblowing or protected activity before the Board than was given to OSC. *Id.*

¶6    The record reflects that the appellant alleged in her OSC complaint that, in reprisal for her alleged disclosures, her former VA supervisor caused the VA OIG to investigate her actions related to the award of a contract to a particular contractor, dissuaded the VA OIG from abandoning its investigation, caused the VA OIG to issue a report containing untrue allegations about her, and threatened to send the report to the Department of the Treasury to ruin the appellant's career. IAF, Tab 1 at 26-52. Thus, we find that she exhausted such claims before OSC.

¶7    However, nothing in the record indicates that she raised before OSC her claim that, in February 2015, following the December 2014 OIG report, the VA downgraded her 2012 performance evaluation. IAF, Tab 7 at 35. On review, the appellant has not presented any evidence that such a claim was raised before OSC; rather, she asserts that, had OSC pursued an investigation of her claims, it would have discovered the downgrade of her 2012 performance evaluation. PFR File, Tab 1 at 12. Although an appellant can give a more detailed account of her whistleblowing activities before the Board than she did to OSC, *see Chambers*,

2022 MSPB 8, ¶ 10, we find that the appellant's claim regarding her performance evaluation amounts to a new allegation that was not presented to OSC. In *Miller v. Federal Deposit Insurance Corporation*, 122 M.S.P.R. 3, ¶ 10 (2014), *aff'd*, 626 F. App'x 261 (Fed. Cir. 2015), the Board found that an appellant's claims were not exhausted because he presented new allegations rather than providing a more detailed account of the claims presented to OSC. Consistent with *Miller*, we agree with the administrative judge that the appellant has not shown that she exhausted her administrative remedies with OSC regarding her performance evaluation.[2] ID at 5.

## The appellant has nonfrivolously alleged that she was subjected to a threat of removal.

¶8     In addition to exhausting remedies with OSC as discussed above, to establish Board jurisdiction over an IRA appeal, an appellant must make nonfrivolous allegations[3] that:    (1) she made a protected whistleblowing disclosure under 5 U.S.C. § 2302(b)(8) or engaged in protected whistleblowing activity under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the disclosure or activity was a contributing factor in the agency's decision to take or fail to take, or threaten to take or fail to take, a personnel action as defined by 5 U.S.C.

---

[2] If the appellant has filed or intends to file an OSC complaint regarding the downgrade of her 2012 performance evaluation, she may file a new IRA appeal regarding such a claim. Such an appeal must be filed consistent with law and the Board's regulations. Under 5 U.S.C. § 1214(a)(3), an appellant may file an IRA appeal with the Board once OSC closes its investigation into her complaint and no more than 60 days have elapsed since notification of the closure was provided to her or 120 days have elapsed since she sought corrective action from OSC and she has not been notified by OSC that it shall seek corrective action on her behalf. *Wells v. Department of Homeland Security*, 102 M.S.P.R. 36, ¶ 6 (2006).

[3] A nonfrivolous allegation is an assertion that, if proven, could establish the matter at issue. 5 C.F.R. § 1201.4(s); *see Hessami v. Merit Systems Protection Board*, 979 F.3d 1362, 1368 (Fed. Cir. 2020).

§ 2302(a)(2)(A).[4]  5 U.S.C. §§ 1214(a)(3), 1221(e)(1); *Chambers*, 2022 MSPB 8, ¶ 14; *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016); 5 C.F.R. § 1201.57(a)(1), (b), (c).  We start our analysis by discussing whether a personnel action was threatened against the appellant, including whether a personnel action can be considered threatened when the two individuals involved work for different Federal agencies.  We then turn to whether the appellant made a protected disclosure and whether a protected disclosure was a contributing factor in a personnel action.

¶9      "Personnel actions" are defined as follows:  (i) appointments; (ii) promotions; (iii) actions under 5 U.S.C. chapter 75 or other disciplinary or corrective actions; (iv) details, transfers, or reassignments; (v) reinstatements; (vi) restorations; (vii) reemployments; (viii) performance evaluations under 5 U.S.C. chapter 43 or under Title 38; (ix) decisions regarding pay, benefits, or awards, or involving education or training if it reasonably may be expected to lead to an appointment, promotion, performance evaluation, or other action described in 5 U.S.C. § 2302(a)(2)(A); (x) decisions to order psychiatric testing or examination; (xi) implementations or enforcements of any nondisclosure policy, form, or agreement; and (xii) any other significant changes in duties, responsibilities, or working conditions.  5 U.S.C. § 2302(a)(2)(A).  Absent any disciplinary action, however, the mere threat of disciplinary action can amount to a personnel action.  5 U.S.C. § 2302(b)(8)-(9); *see Spivey v. Department of Justice*, 2022 MSPB 24, ¶ 7; *Hoback v. Department of the Treasury*, 86 M.S.P.R.

---

[4] This appeal involves events that occurred both before and after the December 27, 2012 effective date of the Whistleblower Protection Enhancement Act of 2012 (WPEA), Pub. L. No. 112-199, §§ 101(b)(1)(A), 202, 126 Stat. 1465, 1476, which expanded the Board's IRA jurisdiction.  However, the changes made by the WPEA do not affect our jurisdictional analysis because the appellant's claims of reprisal that occurred before the effective date of the WPEA all arise under section 2302(b)(8).

425, ¶¶ 9-10 (2000) (clarifying that a threat of discipline is a covered personnel action); 5 C.F.R. §§ 1209.2(a), 1209.6(a)(5)(i).

¶10    The appellant alleged that her former supervisor at the VA threatened to have her removed from the Department of the Treasury based on the following actions:  (1) in June 2012, he filed an anonymous complaint with the VA OIG alleging that she improperly awarded a contract based on her personal association with an owner of the company; (2) he caused the VA OIG to continue its investigation of her after she left the agency, notwithstanding the VA OIG's intent to abandon its investigation; (3) he caused the VA OIG to issue a report on December 8, 2014, that contained untrue statements about her; and (4) he stated to the appellant's former coworker that he pressured the VA OIG to issue the report, that he was going to send a copy of the VA OIG report to the Department of the Treasury, that he wanted to ruin the appellant's career, and that he hoped that she would end up in jail.  IAF, Tab 7 at 13-15, 17-18; Tab 14 at 12.  The administrative judge, in a footnote, found that the appellant failed to raise a nonfrivolous allegation that she was subjected to a threat of removal because the VA lacked the authority to take or effect any employment action after the appellant became employed by the Department of the Treasury.  ID at 5 n.2.  On review, the appellant asserts that the administrative judge erred in finding that she failed to nonfrivolously allege that she was subjected to a personnel action and that her subsequent transfer to work for the Department of the Treasury does not preclude Board jurisdiction over her claims.  PFR File, Tab 1 at 25-29.

¶11    We find that the appellant has nonfrivolously alleged that her former supervisor had the authority to recommend a personnel action.  The administrative judge did not cite any authority in support of his finding that the agency lacked the authority to take or effect any action against her.  Under 5 U.S.C. § 2302(b), it is a prohibited personnel practice for "[a]ny employee who has the authority to take, direct others to take, recommend, or approve any personnel action" to "take or fail to take, or threaten to take or fail to take, a

personnel action" because of an employee's protected disclosures or activities. 5 U.S.C. § 2302(b)(8)-(9). The Board has construed the exercise of supervisory or personnel authority under 5 U.S.C. § 2302(b) quite broadly to include instances where a manager's recommendation or threat that an employee be removed is given some weight and consideration, even if no action was ultimately taken against the employee. *See Caster v. Department of the Army*, 62 M.S.P.R. 436, 443 (1994) *aff'd sub nom. Manning v. Merit Systems Protection Board*, 59 F.3d 180 (Fed. Cir. 1995) (Table). Moreover, the Board has held that an employee need not be employed by the agency alleged to have retaliated against her so long as she meets the definition of an "employee." *See Weed v. Social Security Administratio*n, 113 M.S.P.R. 221, 227 (2010). Here, at the time of the alleged retaliatory actions, the appellant was employed by the VA and, as of January 2014, the Department of the Treasury, neither of which is excluded from the definition of agency under 5 U.S.C. § 2302(a)(2)(C).

¶12        Next, we address whether the appellant has nonfrivolously alleged that she was subjected to a threat of a personnel action. As set forth below, we conclude that the appellant raised a nonfrivolous allegation that her former supervisor threatened to have her removed. The Board has held that the term "threaten" in section 2302 should be given a fairly broad interpretation. *Campo v. Department of the Army*, 93 M.S.P.R. 1, ¶ 5 (2002). In *Gergick v. General Services Administration*, 43 M.S.P.R. 651, 654 (1990), an agency investigation resulted in a record of inquiry in which the agency notified the appellant that it appeared that he had violated the agency's standards of acceptable conduct or behavior, which could result in disciplinary action. The Board found that the record of inquiry amounted to a threat to take a personnel action, reasoning that, although the record of inquiry did not state that any discipline was being proposed, the language nonetheless indicated that discipline was possible. *Id.* at 654-57. The Board further highlighted that the likelihood of discipline was not insignificant

given that the record of inquiry was issued following an investigation of the appellant's activities that resulted in a substantial file. *Id.* at 657.

¶13      Here, although the VA OIG report did not recommend any discipline because the appellant was no longer employed at the VA, IAF, Tab 7 at 221, the possibility of the appellant being disciplined based on the severity of the substantiated allegations against her as a high-ranking Government official would not be insignificant. Additionally, the appellant further alleged that her former supervisor made the complaint to the VA OIG that caused the OIG to investigate her, that he routinely threatened other employees that he would have the VA OIG investigate them, and that, due to his control over a supply fund which partially funded the salaries of VA OIG employees, he exerted control and/or influence over the VA OIG. IAF, Tab 7 at 14-15. Finally, the appellant alleged that her former supervisor admitted to another employee that he had convinced the VA OIG to issue the December 2014 report, notwithstanding the VA OIG's stated intent to abandon its investigation after the appellant left the VA, and that he was going to send the report to the Department of the Treasury because he wanted to ruin the appellant's career and see her go to jail. *Id.* at 33-34. Moreover, the Department of the Treasury conducted its own investigation and concluded that "witness testimony consistently indicated that the VA OIG was directed by a senior official at the VA to conduct the VA OIG investigation, and have it released months after [the appellant] left the VA, in an effort to ruin [her] career and reputation." IAF, Tab 14 at 17. We find that such allegations, taken together, amount to a nonfrivolous allegation of a threat to remove the appellant. *See* 5 U.S.C. § 2302(a)(2)(A)(iii) (listing an action under chapter 75 as a personnel action). In so finding, under the circumstances of this case, we broadly interpret the word "take" in 5 U.S.C. § 2302(b)(8), given that the section covers employees who also have the authority to recommend personnel actions, *see Maloney v. Executive Office of the President*, 2022 MSPB 26, ¶ 23 (construing the whistleblower statutes liberally to embrace all cases fairly within their scope),

and given the ordinary, contemporary, and common meaning of the word "take," *see* Webster's Third New International Dictionary 2330 (1993) (defining "take" as, among other things, "undertake" or "set in motion"); *see also Maloney*, 2022 MSPB 26, ¶ 13 (referring to dictionary definitions in the absence of a statutory definition or clear guidance in the legislative history). Although we acknowledge that the Department of the Treasury's report of investigation completely exonerated the appellant, IAF, Tab 14, the fact that it declined to carry out the threat to remove her is not dispositive because whether a threatened action is carried out or not does not determine the Board's jurisdiction in an IRA appeal, *see Hoback*, 86 M.S.P.R. 425, ¶ 9. Accordingly, we find that the appellant has nonfrivolously alleged that she was subjected to a personnel action.[5]

---

[5] On review, the appellant also asserts that the administrative judge erred in failing to address her argument that the VA OIG investigation, including its initiation, continuation, and ultimate report of findings, amounted to a significant change in her working conditions. PFR File, Tab 1 at 16. She alleges that the VA OIG report cast a shadow over her many successes in her career and received media attention, and she was forced to undergo a second investigation by the Department of the Treasury, during which they temporarily withheld her 2014 raise and bonus. IAF, Tab 7 at 30, 33; PFR File, Tab 1 at 23-24. We find that such assertions fail to amount to a nonfrivolous allegation of a "significant change" personnel action because the appellant has not alleged any practical or significant effects that the investigation had on the overall nature of her working conditions, duties, or responsibilities. *See Spivey*, 2022 MSPB 24, ¶ 13 (finding that the appellant did not nonfrivolously allege that she suffered a significant change in duties, responsibilities, or working conditions based on her participation in an interview and preparation of an affidavit as part of an agency investigation); *Skarada*, 2022 MSPB 17, ¶¶ 15-16; S. Rep. No. 112-155, at 20 (2012), *as reprinted in* 2012 U.S.C.C.A.N. 589, 608 (explaining that agency investigations come within the definition of a personnel action only if they result in a significant change in job duties, responsibilities, or working conditions, or have effects that otherwise fit within one of the items listed under the statutory definition of "personnel action"). Furthermore, although the Department of the Treasury's 2014 withholding of the appellant's raise and bonus would qualify as a personnel action under 5 U.S.C. § 2302(a)(2)(A)(ix), there is no evidence that the appellant exhausted this claim before OSC.

_The appellant has nonfrivolously alleged that she made protected disclosures._

¶14    We now turn to whether the appellant nonfrivolously alleged that she made a protected disclosure.  A protected disclosure is one which the employee "reasonably believes evidences:  (i) any violation of any law, rule, or regulation, or (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety."  5 U.S.C. § 2302(b)(8). The proper test for determining whether an employee had a reasonable belief that her disclosure was protected is whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the disclosure evidenced one of the circumstances described in 5 U.S.C. § 2302(b)(8).  _Shannon v. Department of Veterans Affairs_, 121 M.S.P.R. 221, ¶ 28 (2014).  The test for protected status is not the truth of the matter disclosed but whether it was reasonably believed.  _Id._  A reasonable belief that a violation of law is imminent is sufficient to establish a protected disclosure. _Reid v. Merit Systems Protection Board_, 508 F.3d 674, 676-78 (Fed. Cir. 2007). A disclosure of a violation of a Federal Acquisition Regulation (FAR) can evidence a violation of law, rule, or regulation.  _See McCarthy v. International Boundary and Water Commission_, 116 M.S.P.R. 594, ¶ 37 (2011), _aff'd_, 497 F. App'x 4 (Fed. Cir. 2012); _Schnell v. Department of the Army_, 114 M.S.P.R. 83, ¶ 20 (2010).

¶15    Because the administrative judge found that the appellant failed to raise a nonfrivolous allegation that she was subjected to a personnel action, he did not address whether she raised nonfrivolous allegations that she made a protected disclosure.  Thus, we do so now.

¶16      Regarding disclosures of alleged FAR violations, the appellant contended that she disclosed the following: (1) in December 2010,[6] she informed her former supervisor that efforts to rewrite a technical evaluation so that it would result in the type of furniture they wanted were improper because technical evaluation requirements cannot be altered unless the solicitation is amended and all vendors have the opportunity to revise their proposals; (2) in 2011 and 2012, she disclosed to her former supervisor and her former second-level supervisor, among others, that a contractor was working outside the original scope of its contract to provide acquisition policy support; (3) in June 2012, she disclosed to her former supervisor, among others, that delaying awarding contracts to big businesses and placing the money in the supply fund to hold until the next fiscal year was illegal; and (4) in 2013, she disclosed to her former second-level supervisor and the Director of Policy that the agency's use of the services of a support contractor on a sole-source basis was improper because the services they provided for acquisition policy support were not unique enough to justify a sole-source contract. IAF, Tab 7 at 23-28, 179.

¶17      Regarding disclosure 1, the appellant alleges that she reasonably believed that she disclosed a violation of law because having a contractor provide significant changes to the furniture from what was competed violated the requirements in the FAR that all quotes received be fairly considered and the award be made in accordance with the basis for selection in the request for quotes. *Id.* at 24-25, 182-83. Regarding disclosure 2, the appellant contends that the contractor was working outside of its contract by holding outreach events to train vendors on the VA acquisition process, an inherently governmental function. *Id.* at 25. Regarding disclosure 3, the appellant asserts that she reasonably

---

[6] The appellant also alleged that she later made this same disclosure during her testimony before an Administrative Investigative Board (AIB) on October 30, 2013. IAF, Tab 7 at 16, 129-32.

believed that this action would violate the FAR provision which prohibits the Government from requesting a proposal that it could not or did not intend to award or fund, as well as appropriations laws that she understood to allot money to agencies on a yearly basis and to take away money not spent at the end of the fiscal year. *Id.* at 27-28, 179-80. Regarding disclosure 4, the appellant contends that she reasonably believed she was disclosing a violation of the FAR provision that requires the Government to ensure that companies compete for Government contracts. *Id.* at 23. We find that the appellant was in a position to reasonably believe that her disclosures evidenced FAR violations given her background experience and employment as the Associate Deputy Assistant Secretary for Acquisitions. *See, e.g.*, *Kalil v. Department of Agriculture*, 96 M.S.P.R. 77, 84-85 (2004) (considering the appellant's status as an attorney in determining whether he reasonably believed his disclosures amounted to violations of law). Moreover, any doubt or ambiguity as to whether the appellant has made a nonfrivolous allegation of a reasonable belief should be resolved in favor of affording the appellant a hearing. *Id.* at 85; *Ivey v. Department of the Treasury*, 94 M.S.P.R. 224, ¶ 13 (2003). Thus, regarding these matters, we find that the appellant nonfrivolously alleged that she made a disclosure concerning a violation of law, rule, or regulation.

¶18        The appellant also alleges that she disclosed additional violations of law, rule, or regulation, including: (5) in September 2009 and October 2010, she disclosed to her former supervisor that his request that she grant FAC-C Level 1 certifications to interns after completing 1 year at the VA Acquisition Academy was a violation of certification requirements;[7] and (6) in 2011 and 2012, she objected to her second-level supervisor that a contractor was being used as an industry advisory group to circumvent the requirements of the Federal Advisory

---

[7] The appellant also alleged that she later made this same disclosure during her testimony before an AIB on October 30, 2013. IAF, Tab 7 at 16, 134-35.

Committee Act (FACA) which established a process for setting up advisory groups through the General Services Administration (GSA). IAF, Tab 7 at 20-21, 25-26. Regarding disclosure 5, the appellant asserts that the interns' experience was predominately classroom-based and lacked the hands-on experience required to meet the 1 year of contract work experience requirement. *Id.* at 20-21, 179. The appellant's belief that proper certification required 1 year of work experience based on the Contract Specialist (GS-1102) Qualification Standard is purportedly supported by the Federal Acquisition Institute (FAI)'s Certification Requirements as well as a 2014 memorandum regarding revisions to the FAC-C Certification from the Office of Federal Procurement Policy. *Id.* at 21-22; *see* GSA, FAI, FAC-C (Legacy) Certification Requirements, https://www.fai.gov/certificati on/fac-c/contracting-fac/fac-c-legacy-cert-reqs (last visited Aug. 8, 2023); Memorandum for Chief Acquisition Officers Senior Procurement Executives from Lesley A. Field, Acting Administrator of the Office of Management and Budget (May 7, 2014), https://www.fai.gov/sites/default/files/2014-05-07-FAC-C_Refresh.pdf.[8] Thus, regarding this matter, we find that the appellant has nonfrivolously alleged that she disclosed a violation of a rule. *See Chavez v. Department of Veterans Affairs*, 120 M.S.P.R. 285, ¶ 25 (2013) (stating that the Board has suggested that "rule" includes established or authoritative standards for conduct or behavior); *Rusin v. Department of the Treasury*, 92 M.S.P.R. 298, ¶¶ 15-16 (2002) (finding that alleged disclosures of violations of an agency's procurement instruction memorandum and a Government commercial credit card program constituted nonfrivolous allegations of violations of rules). Regarding disclosure 6, the appellant asserts that she had a reasonable belief that her former supervisors used a contractor to set up an advisory group in conjunction with a major university without obtaining GSA approval because she heard her former

---

[8] The links to these documents that the appellant provided with her jurisdictional submission in 2015 appear to be no longer available. IAF, Tab 7 at 20-21.

supervisor boast in meetings that he had circumvented FACA.  IAF, Tab 7 at 179.  As with the appellant's above-referenced alleged violations of law, we find that, given her experience and position, she nonfrivolously alleged that she had a reasonable belief that she was disclosing a violation of law, rule, or regulation.

¶19    We also find that the appellant nonfrivolously alleged that she disclosed an abuse of authority by her former supervisor during her October 30, 2013 testimony before an Administrative Investigative Board (AIB).[9]  In particular, the appellant alleges that, during her testimony, she disclosed that her former supervisor used the VA OIG as a form of intimidation against anybody who dared cross him as well as made abusive comments and engaged in alleged harassment and intimidation.  IAF, Tab 7 at 15-16, 111.  She also alleges that, from Spring 2012 through January 2014, she disclosed monthly to her former supervisor and her former second-level supervisor that her former supervisor was refusing to correct inaccurate data presented during monthly meetings with her peers across the agency and manipulating data to discredit and embarrass her.  *Id.* at 26-27.  We find such allegations amount to a nonfrivolous allegation of a disclosure of an abuse of authority.  *See Mithen v. Department of Veterans Affairs*, 122 M.S.P.R. 489, ¶ 27 (2015) (explaining that an abuse of authority occurs when there is an arbitrary or capricious exercise of power by a Federal official or employee that adversely affects the rights of any person or that results in personal gain or advantage to himself or to preferred other persons), *aff'd*,

_____

[9] Effective December 12, 2017, the National Defense Authorization Act of 2018 (2018 NDAA) amended 5 U.S.C. § 2302(b)(9)(C) to provide that, in addition to the Inspector General of an agency or the Special Counsel, a disclosure to "any other component responsible for internal investigation or review" is also protected.  Pub. L. No. 115-91, § 1097(c)(1), 131 Stat. 1283, 1618 (2017).  We need not decide whether the appellant's 2013 AIB testimony also falls within the coverage of the amended section 2302(b)(9)(C) because the statutory provision is not retroactive.  *Edwards v. Department of Labor*, 2022 MSPB 9, ¶¶ 29-33, *aff'd*, No. 2022-1967, 2023 WL 4398002 (Fed. Cir. July 7, 2023).  In any event, we find, as discussed here, that the appellant nonfrivolously alleged that she made a protected disclosure.

652 F. App'x 971 (Fed. Cir. 2016); *Murphy v. Department of the Treasury*, 86 M.S.P.R. 131, ¶ 6 (2000) (stating that a supervisor's use of his influence to denigrate other staff members in an abusive manner and to threaten the careers of staff members with whom he disagrees constitutes an abuse of authority). Accordingly, in sum, we find that the appellant nonfrivolously alleged that she disclosed violations of law, rule, or regulation and an abuse of authority.[10]

The appellant has nonfrivolously alleged that her alleged disclosures were a contributing factor in the agency's decision to threaten her removal.

¶20     An appellant may meet her jurisdictional burden regarding the contributing factor element if she nonfrivolously alleges that the official who took or threatened to take the personnel action at issue knew of the protected whistleblowing disclosures or activity and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosures or activity were a contributing factor in the personnel action. *Carney v. Department of Veterans Affairs*, 121 M.S.P.R. 446, ¶ 7 (2014). The Board has found that personnel actions alleged to have begun within 1 to 2 years of the appellant's protected whistleblowing disclosures or activity satisfy the timing prong of this knowledge/timing test. *See, e.g.*, *Mastrullo v. Department of Labor*, 123 M.S.P.R. 110, ¶¶ 20-22 (2015).

¶21     Except for the appellant's alleged disclosures regarding a contractor being improperly used on a sole-source basis and a second contractor being improperly used as an industry advisory group, and alleged disclosures made during her AIB testimony, the appellant's remaining alleged disclosures were all made to her

---

[10] To the extent the appellant alleges that she engaged in protected activity by filing an equal employment opportunity complaint (EEO) against her former supervisor, IAF, Tab 7 at 28, we find such an allegation fails to amount to a nonfrivolous allegation that she engaged in protected activity under section 2302(b)(9), *see Edwards*, 2022 MSPB 9, ¶ 25 (holding that complaints to the EEO office regarding discrimination are not within the purview of section 2302(b)(9)(A)(i) and the Board lacks jurisdiction to consider such allegations in the context of an IRA appeal).

former supervisor, whom she alleges threatened her removal. Thus, her former supervisor had knowledge of such disclosures. Many of these alleged disclosures occurred between approximately October 2010[11] and June 2012, within 2 years prior to when the appellant's former supervisor is alleged to have initiated the OIG investigation in July 2012. Although the VA OIG report and the appellant's former supervisor's comments regarding his intent to harm the appellant's career did not occur until December 2014, we find that the appellant has nonfrivolously alleged that such actions were part of a continuum of related actions that commenced with the July 2012 OIG complaint. *See Agoranos v. Department of Justice*, 119 M.S.P.R. 498, ¶¶ 22-23 (2013) (finding that an appellant could satisfy the timing prong of the knowledge/timing test by showing that the personnel actions at issue were part of a continuum of related performance-based actions, the first of which occurred within 2 years of the appellant's disclosure). Moreover, the appellant also made alleged disclosures between Spring 2012 and January 2014 to her former supervisor, which were followed within 2 years by the December 2014 report.

¶22    Accordingly, we find that the appellant has nonfrivolously alleged that she made at least one protected disclosure that was a contributing factor in at least one covered personnel action. *See Fitzgerald v. Department of Agriculture*, 97 M.S.P.R. 181, ¶ 10 (2004). Thus, we find that she has established jurisdiction over this IRA appeal and is entitled to a hearing on the merits.[12] *Salerno*, 123 M.S.P.R. 230, ¶ 5; 5 C.F.R. § 1201.57(c)(4).

---

[11] Although one of the appellant's alleged disclosures to her former supervisor occurred in September 2009, she alleges that she made the same disclosure on October 10, 2010. IAF, Tab 7 at 20, 47-48.

[12] Because the appellant need only nonfrivolously allege that she made at least one protected disclosure that was a contributing factor in at least one personnel action to establish jurisdiction and entitlement to a hearing, we need not address the appellant's remaining alleged protected disclosures. On remand, the administrative judge shall also address whether the appellant met her contributing factor burden under the

## ORDER

¶23　　For the reasons discussed above, we remand this case to the regional office for further adjudication in accordance with this Opinion and Order.

FOR THE BOARD:

/s/
_____

Jennifer Everling
Acting Clerk of the Board
Washington, D.C.

---

knowledge/timing test or pursuant to the factors set forth in *Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶ 15 (2012) with respect to her alleged disclosures regarding a contractor being improperly used on a sole source basis, a second contractor being improperly used as an industry advisory group, and the appellant's AIB testimony.