## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

ANTHONY SALAZAR,
              Appellant,

v.

DEPARTMENT OF VETERANS
    AFFAIRS,
              Agency.

DOCKET NUMBER
SF-1221-16-0649-W-7

DATE: February 7, 2025

# THIS ORDER IS NONPRECEDENTIAL[1]

Anthony Salazar, Pico Rivera, California, pro se.

Steven Snortland, Esquire, Los Angeles, California, for the agency.

Timothy D. Cheng, Esquire, Washington, D.C., for amicus curiae, the
    Office of Special Counsel.

## BEFORE

Cathy A. Harris, Chairman*
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member**

*The Board members voted on this decision before January 20, 2025.
**Member Kerner recused himself and
did not participate in the adjudication of this appeal.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

## REMAND ORDER

The appellant has filed a petition for review of the initial decision, which denied his request for corrective action in this individual right of action (IRA) appeal. For the reasons discussed below, we GRANT the appellant's petition for review, VACATE the initial decision, and REMAND the case to the Western Regional Office for further adjudication in accordance with this Remand Order.

## BACKGROUND

Effective February 4, 2015, the agency removed the appellant from his Motor Vehicle Operations Supervisor position based on a charge of unacceptable performance. *Salazar v. Department of Veterans Affairs*, MSPB Docket No. SF-1221-15-0660-W-1, Initial Appeal File (0660 IAF), Tab 1 at 9-23. On or about February 13, 2015, the appellant filed a complaint with the Office of Special Counsel (OSC) alleging that the removal and other personnel actions predating the removal, including his placement on a performance improvement plan (PIP), were based on reprisal for making protected disclosures. *Id*. at 5, 24; 0660 IAF, Tab 3 at 4-12. On April 27, 2015, OSC informed the agency that it had reasonable grounds to believe that the agency removed the appellant because he made protected disclosures and requested that the agency stay the removal pending its investigation of his complaint. 0660 IAF, Tab 5 at 11. The agency complied with OSC's request by cancelling the appellant's removal and placing him on the rolls. *Salazar v. Department of Veterans Affairs*, MSPB Docket No. SF-1221-16-0649-W-1, Initial Appeal File (IAF), Tab 9 at 79; *Salazar v. Department of Veterans Affairs*, MSPB Docket No. SF-1221-16-0649-W-7 (W-7 AF), Tab 15 at 48. OSC ended its inquiry into the appellant's complaint on June 23, 2015, and informed him of his right to seek corrective action from the Board. 0660 IAF, Tab 1 at 24, Tab 5 at 10.

The appellant filed a June 29, 2015 Board appeal challenging his removal, which the agency appears to have reimposed on July 26, 2015, and other

personnel actions predating the removal (the 0660 appeal). 0660 IAF, Tab 1 at 1, 4, 6, Tab 5 at 10, Tab 17 at 5-6. The appellant alleged that a denial of training, a change to his performance standards, his receipt of a notice of unacceptable conduct and placement on a PIP, and his removal were based on two disclosures he made in October 2013 involving claims of misuse or mismanagement of Government fleet credit cards and vehicles. 0660 IAF, Tab 17 at 3-4, 5-6.

After a hearing, the administrative judge issued a May 4, 2016 initial decision denying the appellant's request for corrective action. 0660 IAF, Tab 28, Initial Decision at 2. He found that the appellant's burden included proving that his October 2013 disclosures were protected under the heightened standards of 5 U.S.C. § 2302(f)(2), rather than the generally applicable standard set forth at 5 U.S.C. § 2302(b)(8), but he did not meet that burden. *Id.* at 16-52.

The appellant filed a June 6, 2016 petition for review of that initial decision. *Salazar v. Department of Veterans Affairs*, MSPB Docket No. SF-1221-15-0660-W-1, Petition for Review File, Tab 1. The Board issued an Opinion and Order granting the petition for review, vacating portions of the initial decision and affirming others, while remanding the appeal for further adjudication. *Salazar v. Department of Veterans Affairs*, 2022 MSPB 42. Contrary to the administrative judge's finding, the Board held that section 2302(f)(2) did not apply to the circumstances at hand because the appellant's principal job function was not to regularly investigate and disclose wrongdoing. *Id.*, ¶¶ 9-22. Instead, the Board found that the appellant's disclosures fell under the generally applicable section 2302(b)(8). The Board further found that the appellant proved that he made October 2013 disclosures about disarray and lax security involving dozens of vehicles and credit cards and that these disclosures were protected by section 2302(b)(8). *Id.*, ¶¶ 24-26. The Board also found that the appellant proved that the agency took a number of personnel actions against him, *id.*, ¶¶ 27-31, and proved that his protected disclosures were a contributing factor to the same, *id.*,

¶¶ 32-33. Consequently, the Board remanded the appeal for the administrative judge to determine whether the agency could meet its burden of proving that it would have taken the same personnel actions in the absence of the protected disclosures. *Id.*, ¶¶ 34-36.

In the meantime, the appellant filed a second OSC complaint, on February 3, 2016. Then, on July 23, 2016, the appellant filed this second IRA appeal alleging that the agency caused him to be liable for a debt relating to his Federal Employee Health Benefits (FEHB) and withheld pay for annual leave to which he was entitled after his removal. The appellant alleged that these actions were reprisal for (1) his October 2013 disclosures, (2) his first OSC complaint, filed in February 2015, and (3) his first Board appeal, i.e., the 0660 appeal, filed in June 2015. IAF, Tab 1 at 3, 5.

The administrative judge ordered the appellant to prove that the Board had jurisdiction over this, his second IRA appeal. IAF, Tab 3. After the appellant filed a response to the order, the agency moved to dismiss the appeal for lack of jurisdiction. IAF, Tabs 8-9. Because the appellant's petition for review in the 0660 case was pending before the Board, the administrative judge dismissed this appeal without prejudice subject to automatic refiling. IAF, Tab 11. The administrative judge noted that some of the same alleged whistleblowing that the appellant raised in this appeal was also at issue in his prior appeal pending before the full Board. *Id.* at 5. Several times thereafter, the administrative judge automatically refiled and dismissed this appeal without prejudice to refiling. *Salazar v. Department of Veterans Affairs*, MSPB Docket Nos. SF-1221-16-0649-W-2, SF-1221-16-0649-W-3, SF-1221-16-0649-W-4, SF-1221-16-0649-W-5, SF-1221-16-0649-W-6, SF-1221-16-0649-W-7. In the most recent refiling, the appellant informed the administrative judge that he wished to proceed with adjudication of the case. W-7 AF, Tab 4 at 4.

The administrative judge found that the appellant exhausted his OSC remedy and that the Board has jurisdiction over the appeal. W-7 AF, Tab 8,

Tab 24, Initial Decision (ID) at 8-9 & n.6; IAF, Tab 8 at 57-73. However, after a hearing, the administrative judge denied the appellant's request for corrective action in this case. ID at 1, 16.

The administrative judge found that the appellant proved by preponderant evidence that he made protected disclosures, namely, the same two October 2013 disclosures raised in the 0660 appeal, and that he engaged in protected activity by filing a whistleblower reprisal complaint with OSC followed by the 0660 appeal.[2] ID at 10-12. The administrative judge also determined that the appellant proved he was subjected to a personnel action when the agency reenrolled him in the FEHB program following receipt of the April 27, 2015 letter from OSC requesting that the agency stay its removal action for 90 days, and "then imposed a collection for those benefits, [and] . . . negatively impacted his pay and benefits by imposing a deduction for a benefit he did not know he had and did not use." ID at 14; IAF, Tab 9 at 79; 0660 AF, Tab 5 at 11. But she concluded that the agency's refusal to allow the appellant to use his annual leave or receive a payout of that leave as part of his final lump sum payment, between August 2015 and January 2016, was not a personnel action. ID at 6-7, 9 & n.6, 13-14.

Finally, the administrative judge found that the appellant did not prove by preponderant evidence that his disclosures and protected activity were contributing factors in his FEHB debt because he did not show that the officials who were aware of those activities had any role in the actions taken by the Defense Finance and Accounting Service (DFAS) to reenroll the appellant in the FEHB program and create a debt for that benefit. ID at 14-15. The administrative judge also found that there was no evidence that anyone in DFAS knew of the appellant's protected activities. ID at 16.

The appellant has filed a petition for review, the agency has filed a response to the petition for review, the appellant has filed a reply to the response,

---

[2] Consistent with the Board's decision in the 0660 appeal, the administrative judge found that the disclosures were protected under section 2302(b)(8). ID at 10-12.

and OSC has filed an amicus curiae brief.[3]  Petition for Review (PFR) File, Tabs 1, 3-5.

## DISCUSSION OF ARGUMENTS ON REVIEW

<u>The appellant proved that he made protected disclosures and engaged in protected activity.</u>

As set forth above, the appellant made disclosures in October 2013 about disarray and lax security involving dozens of vehicles and credit cards.  The administrative judge correctly found that these were the same disclosures underlying the 0660 appeal and correctly found that they were protected.  ID at 10-12; *see* 5 U.S.C. § 2302(b)(8); *Salazar*, 2022 MSPB 42, ¶¶ 24-26.

The appellant also filed a February 2015 OSC complaint and the June 2015 Board appeal, i.e., the 0660 appeal.  The administrative judge correctly found these to be protected activities.  ID at 12; *see* 5 U.S.C. § 2302(b)(9)(A)(i); *Elder v. Department of the Air Force*, 124 M.S.P.R. 12, ¶ 40 (2016).  Because these findings of protected disclosures and activities are not disputed on review, we can turn our attention to the alleged personnel actions.

<u>The appellant proved that the agency took personnel actions against him.</u>

In the instant IRA appeal, the appellant alleges that the agency took two retaliatory personnel actions.  Put most simply, he argues that the agency caused him to be liable for a debt for FEHB premiums and withheld pay for annual leave to which the appellant was entitled after his removal.  We find that the appellant proved that both are covered personnel actions by the agency.

*FEHB debt*

The appellant challenged the agency's action of withholding funds from his final payout to account for a debt incurred due to healthcare insurance coverage that terminated after his removal but had been reinstated by the agency without

---

[3] The parties have not disputed the administrative judge's well-reasoned jurisdictional findings on review, and we discern no basis to revisit them here.

his knowledge as part of its compliance with OSC's stay request. IAF, Tab 1 at 5; W-7 AF, Tab 14 at 5-7, 9, Tab 17 at 3. The administrative judge found that this constituted an appealable personnel action because it negatively impacted the appellant's pay and benefits. ID at 14. The agency does not dispute this finding, and we agree with this determination by the administrative judge.

*Annual leave*

The administrative judge determined, however, that the appellant did not suffer a personnel action when the agency refused his request to take annual leave or receive a payout for that leave. ID at 12-13. She reasoned that as of February 2016, when the appellant was separated from the agency's rolls and received his final leave and earnings statement, the value of his accrued leave was withheld to pay for various overpayments he had received. ID at 7, 12-13; IAF, Tab 8 at 55; W-7 AF, Tab 15 at 48, 52, Tab 22, Hearing Recording (testimony of an agency Payroll Supervisor), Tab 20 at 4, 10. The appellant challenges on review the administrative judge's determination that the agency's denial of his request for annual leave was not a personnel action because he was not entitled to such leave given the debts he had accrued. PFR File, Tab 1 at 12-13. We agree with the appellant and find that the agency's denial of his request to use annual leave or receive a payment for that annual leave is a personnel action.

For purposes of this appeal, a personnel action means "a decision concerning pay . . . [or] benefits." 5 U.S.C. § 2302(a)(2)(A)(ix). The Board has found that an agency's denial of a request for annual leave constitutes the taking of a personnel action under 5 U.S.C. § 2302(a)(2)(A)(ix). *Brown v. Department of the Navy*, 102 M.S.P.R. 377, ¶ 15 (2006); *see Mc Corcle v. Department of Agriculture*, 98 M.S.P.R. 363, ¶ 16 (2005) (finding the denial of sick leave was a personnel action), *overruled on other grounds by Collier v. Small Business Administration*, 2024 MSPB 13, ¶¶ 1, 7. In determining that the agency's denial of the appellant's requests regarding his annual leave was not a personnel action, the administrative judge cited to *Marren v. Department of Justice*, 50 M.S.P.R.

369, 372-73 (1991), and *Arauz v. Department of Justice*, 89 M.S.P.R. 529, ¶¶ 17-19 (2001), in which the Board found that the denial of official time and administrative leave generally were not personnel actions. However, the Board distinguished the denial of these categories of leave from the denial of annual and sick leave on the basis that these latter benefits accrue automatically. *Arauz*, 89 M.S.P.R. 529, ¶ 20 & n.6; *Marren*, 50 M.S.P.R. at 373; *see* 5 U.S.C. § 6303(a), (f) (setting forth the rates of accrual of annual leave). Here, the appellant's leave and earnings statement as of the cancellation of his removal in May 2015, and his final leave and earnings statement in February 2016, show an annual leave balance of 131.5 hours. IAF, Tab 8 at 55; W-7 AF, Tab 15 at 52. Therefore, we find that the agency's denial of the use of this annual leave was a personnel action.

This principle applies whether the annual leave was denied in the form of a paid absence from duty time while employed or denied as an end-of-service payout representing the value of that annual leave. *See* 5 U.S.C. § 5551(a) (providing that "[a]n employee . . . who is separated from service . . . is entitled to receive a lump-sum payment for accumulated and current accrued annual or vacation leave to which he is entitled by statute"); *see* 5 C.F.R. §§ 550.1201, 550.1203(a) (stating in the Office of Personnel Management's regulations implementing 5 U.S.C. § 5551(a), that "[a]n agency must make a lump-sum payment for accumulated and accrued annual leave when an employee . . . [s]eparates."). In the latter case, the denial of such a payout may also be considered a personnel action as a denial of pay. *See Roach v. Department of the Army*, 82 M.S.P.R. 464, ¶¶ 4, 13-14 (1999) (finding that an agency's garnishment of an appellant's salary for recovery of an erroneous award was a personnel action because it concerned both pay and an award).

The agency contends that it properly denied the appellant the use or payout of his leave because it was offsetting a corresponding debt. PFR File, Tab 3 at 6. This argument improperly conflates the appellant's burden to prove his prima

facie case with the agency's burden to prove its affirmative defense, which is discussed below. The Board may not proceed to this defense unless it has first determined that an appellant established his prima facie case. 5 U.S.C. § 1221(e)(2); *see Clarke v. Department of Veterans Affairs*, 121 M.S.P.R. 154, ¶ 19 n.10 (2014), *aff'd per curiam*, 623 F. App'x 1016 (Fed. Cir. 2015).[4] The reasons for the agency's actions are relevant to the issue of whether it proved by clear and convincing evidence that it would have taken the same action absent the appellant's protected activity, and not whether the appellant suffered a personnel action. *See Scoggins v. Department of the Army*, 123 M.S.P.R. 592, ¶¶ 27-28 (2016) (concluding that it was improper in an IRA appeal for an administrative judge to consider whether the agency proved its affirmative defense despite determining that an alleged action was not a personnel action).

In sum, the appellant's proven and protected whistleblowing for purposes of this appeal includes (1) his October 2013 disclosures, (2) his first OSC complaint, filed in February 2015, and (3) his first Board appeal, filed in June 2015. The appellant's proven personnel actions for the purposes of this appeal include the agency (1) causing him to be liable for FEHB debt, and (2) withholding pay for annual leave to which the appellant was entitled after his removal.

<u>The appellant has shown that his protected disclosures and activities were a contributing factor in the contested personnel actions.</u>

An appellant may be entitled to corrective action in an IRA appeal if he shows that a protected disclosure or activity was a contributing factor in a personnel action. 5 U.S.C. § 1221(e)(1)-(2). An employee may meet this burden through circumstantial evidence, such as evidence that the official taking the

---

[4] Although the U.S. Court of Appeals for the Seventh Circuit has disagreed with the Board's decision in *Clarke*, it has done so on different grounds. *Delgado v. Merit Systems Protection Board*, 880 F.3d 913, 923-25 (7th Cir. 2018), *as amended on denial of rehearing and rehearing en banc* (June 19, 2018). Thus, its disagreement does not implicate the basis for which we cite *Clarke* here.

personnel action knew of the protected disclosure or activity and the personnel action occurred within a period of time such that a reasonable person could conclude that the protected disclosure or activity was a contributing factor in the personnel action. 5 U.S.C. § 1221(e)(1). The Board has found that personnel actions alleged to have begun within 1 to 2 years of the appellant's protected whistleblowing disclosure or activity satisfies the timing prong of this knowledge/timing test. *Cooper v. Department of Veterans Affairs*, 2023 MSPB 24, ¶ 20. Relevant to the circumstances of this appeal, the Board has also recognized that an appellant can satisfy the timing prong by showing that a personnel action was part of a continuum of related personnel actions, the first of which occurred within 2 years of the appellant's protected disclosure or activity. *Id.*, ¶ 21; *Agoranos v. Department of Justice*, 119 M.S.P.R. 498, ¶¶ 22-23 (2013).

*FEHB debt*

The administrative judge found that, although relevant officials were clearly aware of the appellant's protected actions before the agency implemented the OSC stay request, which in turn led to the appellant owing a debt for health insurance benefits that he had not requested, the appellant did not prove that his protected disclosures and activities were a contributing factor in the FEHB reenrollment and resulting debt. ID at 15. The administrative judge reached this conclusion on finding that the appellant did not prove that these officials "had any role in DFAS'[s] actions to re-enroll [him] in FEHB and to create debts for that benefit," and that there was no evidence that anyone in DFAS knew of the appellant's protected disclosures and activities. ID at 15-16. We disagree with this analysis.

As set forth above, the agency removed the appellant effective February 4, 2015. 0660 IAF, Tab 1 at 9-23. The proposing and deciding officials to that removal action had actual knowledge of the appellant's October 2013 disclosures because the proposing official was the recipient of the disclosures and the appellant raised them in his response to the proposed removal, which the deciding

official considered. *E.g.*, *Salazar*, 2022 MSPB 42, ¶¶ 32-33. In pursuing the removal action, the proposing and deciding officials relied on the help of the agency's Chief of its Employee/Labor Relations Section (Chief). *E.g.*, IAF, Tab 1 at 5, 19-20, 23; ID at 2-3. While we have not found evidence directly answering whether the Chief reviewed the appellant's response to gain actual knowledge of the appellant's October 2013 disclosures at that time, she surely had constructive knowledge of them. *See Abernathy v. Department of the Army*, 2022 MSPB 37, ¶ 15 (recognizing that an appellant may establish an official's constructive knowledge of a protected disclosure by demonstrating that an individual with actual knowledge of the disclosure influenced the official accused of taking the retaliatory action). She also gained actual knowledge of the appellant's first OSC complaint and first Board appeal in the months that followed the appellant's removal.[5] *E.g.*, W-7 AF, Tab 9 at 24-26, 78-79.

On March 9, 2015, at the appellant's request, the Chief "issued [to the appellant] a memorandum confirming that his Federal Employee Health Benefits . . . had been terminated effective March 4, 2015" because she believed he had not signed up for continuation of such coverage before it lapsed. ID at 2-3, 15; IAF, Tab 9 at 78-79. Thereafter, in an April 27, 2015 letter to the agency, OSC summarized the appellant's whistleblowing activity and noted that, "[i]n order to maintain the *status quo ante* while OSC investigates and determines whether further action is warranted, we request that the [agency] stay [the appellant's] removal, which became effective on February 4, 2015, pending OSC's investigation of the reprisal complaint." IAF, Tab 8 at 76. OSC indicated that the Board has the authority to stay a removal after its effective date. *Id.* at 76 n.1. Thus, OSC's letter placed the responsibility of staying the appellant's

---

[5] As previously stated, the Chief had at least constructive knowledge of the appellant's October 2013 disclosures by virtue of her assisting the proposing and deciding officials with the removal action. But the record suggests that her subsequent handling of OSC's stay gave her actual knowledge of the disclosures, as well, since OSC's stay request explicitly described them. *E.g.*, IAF, Tab 8 at 76, Tab 9 at 79.

removal and maintaining the status quo ante on the agency, not on some other entity such as DFAS.

The Chief indicated that, at OSC's request, on or about May 15, 2015, the appellant's removal "was to be cancelled pending the outcome of his appeal." IAF, Tab 9 at 79. She stated that, following OSC's instructions, the appellant's "record was restored," and he was placed on leave without pay (LWOP) from February 15 until April 26, 2015, and then paid for a 90-day period from April 27 through July 25, 2015. *Id.* She further averred that *she* prepared the paperwork to cancel the appellant's removal, and the paper timecards required to pay him for the periods in question, as well as a "Remedy Request" to submit with the appellant's timecards. *Id.* The Chief explained as follows:

> Because of my belief his FEHB coverage lapsed, I was not aware a Standard Form 2810 would be required to "cancel" benefits that would have otherwise lapsed because I believed there should have been nothing to cancel. However, [the appellant's] FEHB deductions were automatically restored by DFAS apparently through the OSC restoration actions and not as a result of [the appellant] enrolling in health coverage.

*Id.* She asserted that, when the appellant's record was restored, DFAS, which handles the agency's pay, "automatically restored his FEHB and deductions for this were apparently taken from his pay." *Id.* at 80. She noted that the appellant had acquired non-FEHB health insurance coverage during the time he was no longer employed by the agency. *Id.* The Chief reiterated that she was "initially unaware that a Standard Form 2810 (SF-2810) was required to prevent the health benefit deductions" and that she was attempting to have those FEHB deductions restored, but there was no documentation of a cancellation of the health benefits, which was required to allow the system to provide a refund to the appellant. *Id.* She indicated that, on August 2, 2016, she first learned that the agency needed to complete the SF-2810 to seek reimbursement for the overpaid health insurance premium amounts, and she immediately did so. *Id.* at 80, 83-84. The Chief noted that "[a]ny complications with rectifying [the appellant's] pay are related to my

confusion over the steps to affect [sic] accurate disbursement of his final pay . . . ." *Id.* at 80-81.

The "Remedy Request" mentioned above by the Chief explained that OSC had requested a stay of the appellant's removal, noted that the removal "was cancelled," set forth the dates the appellant was to be placed on LWOP and then paid per OSC's request, indicated that a "payment of debt for lump sum leave should be made from back pay," and specified that leave should be fully restored to his account with leave credited to him that would have been accrued. IAF, Tab 9 at 88. However, the "Remedy Request" did not discuss how to handle the appellant's FEHB coverage, nor did the Chief provide DFAS with an SF-2810 at that time. *Id.* Thus, contrary to the administrative judge's finding that the Chief had no role in the actions that led to the creation of the appellant's FEHB debt and his resulting loss of pay, the Chief's action instructing DFAS to reinstate him in accordance with OSC's stay request, along with her failure to address the issue of health benefits or provide DFAS with an SF-2810, resulted in the restoration of the appellant's FEHB coverage, which in turn created the FEHB debt at issue in this case.

Under these circumstances, we find that the Chief had knowledge of the appellant's whistleblowing when she effectively withheld funds from his final payout to account for the FEHB debt incurred due to healthcare insurance coverage that was reinstated by the agency as part of its compliance with OSC's stay request. The Chief took or failed to take this action during the period spanning May 2015 and February 2016, a period after the February 2015 OSC complaint and June 2015 Board appeal such that a reasonable person could conclude that the protected activities were a contributing factor in the personnel action. IAF, Tab 9 at 79, W-7 AF, Tab 20 at 4-6; *see Cooper*, 2023 MSPB 24, ¶ 20. While the appellant's October 2013 disclosures are outside the window for which the Board will ordinarily find the knowledge/timing test satisfied as it relates to at least a portion of this personnel action, we find the test satisfied

because the FEHB reenrollment and debt is part of a continuum of related personnel actions, the first of which occurred within 2 years of the protected whistleblowing. *Cooper*, 2023 MSPB 24, ¶ 21; *Agoranos*, 119 M.S.P.R. 498, ¶¶ 22-23.

We recognize that DFAS "handles [the agency's] pay." IAF, Tab 9 at 80, 108; *see* 55 Fed. Reg. 50,179 (Dec. 5, 1990). But it is responsible for calculating and paying an appellant based on information provided to it by the agency. *Walker v. Department of the Army*, 90 M.S.P.R. 136, ¶ 15 (2001). In the context of determining whether an agency complied with a Board back pay order, the Board has observed that an agency must show that it provided DFAS with the information it needed to process the award. *Id.*, ¶¶ 13, 15. By analogy, here, the agency will now have the burden of proving by clear and convincing evidence that absent the appellant's protected disclosures and activities it still would have failed to complete the SF-2810, and taken any other steps required by DFAS that it failed to take, resulting in DFAS's reenrollment of the appellant in FEHB.

*Annual leave*

The record reflects that the Chief was also responsible for authorizing payment for the appellant's accrued annual leave by way of correcting the applicable timecards and that "payroll" was unable to address the matter until that occurred. IAF, Tab 9 at 24-28. That authorization from the Chief did not occur. The Chief averred that any delayed return of funds, such as a lump sum payment for accrued leave that might have been due the appellant, was the result of an "oversight" on her part in timely processing the matter. *Id.* at 80. Thus, the Chief failed to take a personnel action, i.e., a decision concerning pay or benefits.

There is no indication that any action denying the appellant leave or a payment representing such leave was taken by DFAS; instead, DFAS suggested that the appellant request a pay audit through his agency and informed him that he should be able to request pay for annual leave because it appeared that, as of January 21, 2016, he was still a current employee. *Id.* at 26. A series of emails

addressing the leave issue included information from the appellant notifying all recipients, including the Chief, that he had a reprisal case pending before the Board. *Id.* at 25-28, 48-49, 85. In January 2016, an agency payroll employee advised the appellant that the reason he was not paid out for his leave was that the Chief or others had not "authorized it by way of doing the corrected timecards" and that the appellant first needed "to settle" his Board "case" for an annual leave payout. *Id.* at 33, 37-38.

Given the Chief's failure to grant the appellant leave or authorize a payment for such leave beginning in January 2016, IAF, Tab 9 at 21-41, along with the appellant's February 2015 OSC complaint and June 2015 Board appeal, we find that she failed to take such action within a period of time such that a reasonable person could conclude that the activity was a contributing factor in the personnel action. *See* 5 U.S.C. § 1221(e)(1); *Cooper*, 2023 MSPB 24, ¶ 20. Once again, we also find that the appellant's October 2013 disclosures were a contributing factor because this leave-related personnel action is part of a continuum of personnel actions, the first of which occurred within 2 years of the protected whistleblowing. *Cooper*, 2023 MSPB 24, ¶ 21; *Agoranos*, 119 M.S.P.R. 498, ¶¶ 22-23.

OSC asserts in its amicus brief that the knowledge/timing test is not the only way to prove that a disclosure or protected activity is a contributing factor in a personnel action, active or constructive knowledge by the acting official is not required, and all record evidence linking an employee's protected activity to the personnel action at issue should be considered. PFR File, Tab 5 at 3, 5. OSC contends that after the appellant filed a complaint with OSC and OSC requested a stay of the appellant's removal, to which the agency agreed, the erroneous FEHB withholding ensued, for which the appellant now seeks a refund. *Id.* at 5. OSC claims that "[t]hese facts plainly demonstrate a causal link between [the appellant's] OSC complaint and the FEHB [w]ithholding," and "[n]othing more is required to shift the burden to the [agency]." *Id.* at 6. Having found, however,

that the appellant met the contributing factor element based on the knowledge/timing test, we need not address the arguments raised by OSC in this case.

Accordingly, we find that the appellant has proven by preponderant evidence that his protected disclosures and activity was a contributing factor in the two personnel actions discussed above.

This appeal is remanded for further adjudication.

When protected disclosures or activity are found to have been a contributing factor in a personnel action appealed to the Board, the Board will not sustain the action unless the agency presents clear and convincing evidence that it would have taken the action in the absence of the protected disclosures or activity. 5 U.S.C. § 1221(e)(2); *Arauz*, 89 M.S.P.R. 529, ¶ 12. Resolution of this issue is likely to require an assessment of the credibility of witnesses, which is a matter best left to the administrative judge. *Arauz*, 89 M.S.P.R. 529, ¶ 12. Accordingly, the appeal must be remanded so that the administrative judge may issue a remand initial decision determining whether the agency has met the burden to prove its affirmative defense.

On remand, the administrative judge may incorporate into her remand initial decision her prior jurisdictional findings. She may also incorporate her prior determination that the appellant engaged in protected whistleblowing by virtue of his (1) October 2013 disclosures, (2) February 2015 OSC complaint, and (3) June 2015 Board appeal. She may further incorporate her finding that the reenrollment under the FEHB program and associated debt was a personnel action. But her remand initial decision should recognize our findings above that the appellant also proved that the denial of the use or payout of his annual leave was a personnel action and that he proved the contributing factor criterion as to both personnel actions. The administrative judge should then determine whether the agency showed by clear and convincing evidence that it would have taken the same actions absent the appellant's protected disclosures and activity. Making

this finding requires additional factual findings and may also require credibility determinations. *Gonzalez v. Department of Transportation*, 109 M.S.P.R. 250, ¶ 22 (2008).

## ORDER

For the reasons discussed above, we remand this case to the regional office for further adjudication in accordance with this Remand Order.

FOR THE BOARD:

_____

Gina K. Grippando
Clerk of the Board

Washington, D.C.