**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| CATARINO RODRIGUEZ, | DOCKET NUMBER |
| Appellant, | NY-1221-22-0134-W-1 |
| v. | |
| DEPARTMENT OF LABOR, | DATE: January 25, 2024 |
| Agency. | |

# THIS ORDER IS NONPRECEDENTIAL[1]

Michael John Borrelli, Esquire, Alexander T. Coleman, Esquire, Ryan T. Holt, Esquire, and Lauren R. Reznick, Esquire, Garden City, New York, for the appellant.

Luis A. Garcia, Los Angeles, California, for the agency.

Danielle L. Jaberg, Esquire, and David M. Kahn, Esquire, San Francisco, California, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

**REMAND ORDER**

The appellant has filed a petition for review of the initial decision, which dismissed his individual right of action (IRA) appeal for lack of jurisdiction. For the reasons discussed below, we GRANT the petition for review, VACATE the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

initial decision, and REMAND the case to the New York Field Office for further adjudication in accordance with this Remand Order.

## BACKGROUND

At all times relevant to this appeal, the appellant has been employed as a GS-11 Wage and Hour Investigator in the Department of Labor, Wage and Hour Division's Long Island District Office. Initial Appeal File (IAF), Tab 11 at 19. He alleges that, in December 2016, he was assigned to investigate possible violations of the Fair Labor Standards Act (FLSA) committed by a horse trainer at Belmont Racetrack. IAF, Tab 17 at 5. He determined that the subject horse trainer owed his employees approximately $140,000 in unpaid wages and an additional $13,900 as a civil money penalty. *Id.* In November 2018, he provided his findings to the subject's attorney along with a back pay compliance agreement. *Id.* Shortly thereafter, the attorney informed him that his client was unwilling to pay the amount calculated because it was significantly more than other horse trainers at Belmont were paying to settle their wage-related violations with the agency. *Id.* Specifically, the attorney supplied that one horse trainer received a deal from the agency requiring her to pay only $50,000 of the close to $1 million in wages that she had owed—or so his client had heard. *Id.* at 5-6, 81.

The appellant alleges that, in December 2018, he reported the attorney's statements about the supposed settlement to an Assistant District Director (ADD) and District Director (DD) in-person, and he followed-up via email. *Id.* at 6. He expressed uncertainty regarding the truth of the settlement in his email, stating, "I am not sure if any of this is correct, but since the attorney was questioning if there was any impropriety involved I thought it was necessary to bring this information to a manager." *Id.* at 81. According to the appellant, the Office of Inspector General (OIG) came to the Long Island District Office the following month to investigate the matter and requested all files related to wage investigations of horse trainers at Belmont, which the appellant allegedly turned

over. *Id.* at 6. He also learned around that time that his first-line supervisor had overseen the supposed settlement. *Id.*

According to the appellant, his first-line supervisor began treating him differently because he believed that the appellant reported the matter to OIG. *Id.* at 6. Among other things, he alleges that his supervisor began micro-managing his investigations and gave substantial resistance to his cases moving forward. *Id.*; IAF, Tab 1 at 17. He alleges that he began working with OIG as a cooperating witness and wore a hidden recording device to the office on multiple occasions to record his conversations with his supervisor. IAF, Tab 17 at 6, 83-85. He alleges that he requested a new supervisor, which his second-line supervisor denied, and received a negative performance review in October 2019, which resulted in the agency's denial of his within-grade increase in pay. *Id.* at 7-8; IAF, Tab 1 at 21.

Thereafter, the appellant filed a complaint with the Office of Special Counsel (OSC). IAF, Tab 1 at 9-26. He alleged retaliation for disclosing to ADD and DD on December 21, 2018, "possible impropriety on an investigation (FLSA, H2B), reported to [him] by an attorney," *id.* at 17-18, and protected activity of cooperating in an OIG investigation, *id.* at 20-21. On April 27, 2022, OSC notified the appellant that it was terminating its investigation into his complaint. *Id.* at 27.

The appellant timely filed an IRA appeal with the Board. *Id.* at 1-5. The administrative judge assigned to this matter issued a jurisdictional order wherein she explained the circumstances under which the Board has jurisdiction to adjudicate IRA appeals, and she ordered the appellant to file specific evidence and argument regarding jurisdiction. IAF, Tab 14 at 2-8. Following the parties' responses, IAF, Tabs 17-18, the administrative judge issued an initial decision dismissing the appeal for lack of jurisdiction, IAF, Tab 19, Initial Decision (ID) at 14. She identified the following three alleged protected whistleblower disclosures or activities: (1) the disclosure to ADD and DD in December 2018

regarding the supposed settlement (disclosure 1); (2) the turnover of files to OIG in January 2019 (disclosure 2); and (3) cooperation with OIG in February 2019 by wearing a hidden recording device to record conversations with his first-line supervisor and sharing his recordings with OIG (disclosure 3).[2]  ID at 7-8. However, she found that the appellant did not nonfrivolously allege that he made disclosures protected by the Whistleblower Protection Act (WPA), as amended, or engaged in activity protected under the WPA, as amended.  ID at 12-14.

The appellant has filed a petition for review.  Petition for Review (PFR) File, Tab 5.  The agency has responded in opposition, PFR File, Tab 11, and the appellant has replied, PFR File, Tab 19.[3]

## ANALYSIS

Under the Whistleblower Protection Enhancement Act of 2012 (WPEA), the Board has jurisdiction over an IRA appeal if the appellant has exhausted his administrative remedies before OSC and makes nonfrivolous allegations that (1) he made a protected disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D), and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a).  *Edwards v. Department of Labor*, 2022 MSPB 9, ¶ 8, *aff'd*, No. 22-1967 (Fed. Cir. Jul. 7, 2023); *Salerno v. Department of the Interior*,

---

[2] For ease of reference, we will also refer to the alleged protected disclosures or activities as disclosures 1, 2, and 3 regardless of whether they qualify as protected disclosures or activities.

[3] The appellant's reply brief contains evidence that was not submitted into the record before the administrative judge.  PFR File, Tab 19 at 17-21.  The Board generally will not consider evidence submitted for the first time with a petition for review absent a showing that it was unavailable before the close of the record below despite the party's due diligence.  *Avansino v. U.S. Postal Service*, 3 M.S.P.R. 211, 214 (1980).  However, the Board may consider submissions relevant to the issue of Board jurisdiction, a matter that may be raised at any time during the Board proceedings.  *See Pirkkala v. Department of Justice*, 123 M.S.P.R. 288, ¶ 5 (2016).  Thus, we have considered this evidence, but it does not affect our findings herein.

123 M.S.P.R. 230, ¶ 5 (2016).  Once an appellant establishes jurisdiction over his IRA appeal, he is entitled to a hearing on the merits of his claim, which he must prove by preponderant evidence.  *Salerno,* 123 M.S.P.R. 230, ¶ 5.  If the appellant proves that his protected disclosure or activity was a contributing factor in a personnel action taken against him, the agency is given an opportunity to prove, by clear and convincing evidence, that it would have taken the same personnel action in the absence of the protected disclosure.  5 U.S.C. § 1221(e)(1)-(2); *Salerno,* 123 M.S.P.R. 230, ¶ 5; *see Carr v. Social Security Administration,* 185 F.3d 1318, 1322-23 (Fed. Cir. 1999).

On review, the appellant agrees with the administrative judge's identification of his three alleged protected disclosures.  PFR File, Tab 5 at 8.  However, he contends that she committed the following three errors: (1) regarding disclosure 1, she erroneously found that the appellant failed to allege a reasonable belief that a violation of law or abuse of authority had occurred; (2) relying on pre-WPEA case law, she erroneously found that the appellant's disclosures or activities were not protected because they were made in the course of his normal duties; and (3) she provided no analysis whatsoever regarding disclosure 3, i.e., the appellant's act of wearing a hidden recording device in cooperation with OIG, and that disclosure 3 constituted a protected activity under 5 U.S.C. § 2302(b)(9)(C).  *Id.* at 11.  The agency submitted thorough arguments as well.  PFR File, Tab 11.  We find the appellant's second and third arguments compelling and conclude that he has established jurisdiction over his IRA appeal for the reasons discussed below.

<u>The appellant satisfied his obligation to exhaust his remedies with OSC.</u>

In response to the appellant's petition for review, the agency argues that the appellant did not exhaust alleged disclosure 2 or 3 with OSC.  PFR File, Tab 11 at 12-15.  The administrative judge did not address this issue, having

found that the appellant did not nonfrivolously allege that he made a protected disclosure or engage in protected activity.[4]  ID at 12-14.

To satisfy the exhaustion requirement of 5 U.S.C. § 1214(a)(3), an appellant must have provided OSC with a sufficient basis to pursue an investigation into his allegations of whistleblower reprisal.  *Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶ 7; *Chambers v. Department of Homeland Security*, 2022 MSPB 8, ¶ 10.  An appellant may give a more detailed account of his whistleblowing activities before the Board than he did to OSC.  *Briley v. National Archives and Records Administration*, 236 F.3d 1373, 1378 (Fed. Cir. 2001); *Chambers*, 2022 MSPB 8, ¶ 10.  Here, the appellant provided in his OSC complaint that he was retaliated against for being "a cooperating witness with OIG Agent through[ou]t her investigation and [was] currently and actively assisting as needed."  IAF, Tab 1 at 20.  He provided some details regarding the subject of the investigation and identified by name several personnel who were implicated by the investigation.  *Id.* at 20-21.  OSC, as indicated in its notice to the appellant that it was terminating his inquiry, recognized the core of the appellant's complaint:  he had alleged retaliation for participating in an OIG investigation.  *Id.* at 27.  Accordingly, we find that the appellant provided OSC with a sufficient basis to pursue an investigation and has satisfied his obligation to exhaust his remedies with OSC for alleged disclosures 2 and 3.  *See Briley*, 236 F.3d at 1378.

The parties do not appear to dispute the issue of exhaustion as it pertains to alleged disclosure 1, i.e., the appellant's disclosure to ADD and DD in

---

[4] The administrative judge addressed exhaustion only as it pertains to the alleged personnel actions, finding that the appellant exhausted seven out of nine of his alleged personnel actions with OSC.  ID at 10-12; IAF, Tab 7 at 12-29.  The appellant expressly states that he is not challenging this finding on review, PFR File, Tab 5 at 9 n.2, and the agency does not raise exhaustion of the alleged personnel actions as an issue either, PFR File, Tab 11.  We see no reason to disturb the administrative judge's finding on this issue.

December 2018.  We find that the appellant satisfied his obligation to exhaust his remedies with OSC for this alleged protected disclosure.  IAF, Tab 1 at 16-17.

The appellant did not nonfrivolously allege that he made a protected disclosure.

The appellant avers that, suspecting a "possible impropriety" in a deal a horse trainer at Belmont had supposedly received from the agency regarding her wage-related violations, he verbally reported the alleged deal to ADD and DD, first in-person, then with a follow-up email confirming their conversation (disclosure 1).  PFR File, Tab 5 at 8; IAF, Tab 17 at 5-6, 20, 81.  He alleges that this report was a protected disclosure of a violation of law, rule, or regulation, and/or an abuse of authority.  PFR File, Tab 5 at 12.  The administrative judge found that the disclosure was not protected because the appellant did not have a reasonable belief that a violation of law, rule, or regulation or other circumstance contemplated by the WPEA had occurred.  ID at 12-13.  She cited the appellant's email evidencing that "he was not sure if any of this is correct," referring to the alleged deal, at the time of his disclosure and his statement in his pleadings that "the commencement of the OIG investigation affirmed [his] belief that what he had reported was true."  *Id.*; IAF, Tab 17 at 6, 81.

A nonfrivolous allegation of a protected whistleblowing disclosure is an allegation of facts that, if proven, would show that the appellant disclosed a matter that a reasonable person in his position would believe evidenced one of the categories of wrongdoing specified in 5 U.S.C. § 2302(b)(8).  *Salerno*, 123 M.S.P.R. 230, ¶ 6 (2016).  The proper test for determining whether an employee had a reasonable belief that his disclosures were protected is whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the actions evidenced a violation of a law, rule, or regulation, or one of the other conditions set forth in 5 U.S.C. § 2302(b)(8).  *Id.*  Any doubt or ambiguity as to whether the appellant has made a nonfrivolous allegation of a reasonable belief should be

resolved in favor of affording the appellant a hearing. *Huffman v. Office of Personnel Management*, 92 M.S.P.R. 429, ¶ 13 (2002).

However, an appellant does not make a nonfrivolous allegation that he made a protected disclosure if his disclosure appears to indicate that he is reporting unsubstantiated rumors or that he lacked a firm belief that wrongdoing had occurred. *Id.*, ¶ 10; *see, e.g., Johnson v. Department of Justice*, 104 M.S.P.R. 624, ¶¶ 14-15 (2007); *see generally Shannon v. Department of Veterans Affairs*, 121 M.S.P.R. 221, ¶ 32 (2014) (finding that, applying the disinterested observer standard, it was necessary for the administrative judge to determine whether the appellant reasonably believed that the alleged misconduct described in the disclosures occurred). Here, the appellant states that the only information known to him about the possible improper settlement came from the subject of his investigation's attorney, who heard it from his client, who heard it from a source who may or may not have been the primary source, i.e., the horse trainer who received the supposed settlement. IAF, Tab 17 at 5-6, 81. The appellant expressly stated in his disclosure, "I am not sure if any of this is correct." *Id.* at 81. We find that a disinterested observer would also lack a firm belief in the truth of this information: in considering his degree of removal from someone with actual knowledge of the settlement, he would find this information to be attenuated and unreliable. We recognize that, in a disinterested observer's mind, the more specific the information the more reliable it may seem, and, here, the information included some aspects about the settlement such as the approximate dollar amount and the name of the horse trainer involved. However, we do not find that a disinterested observer would firmly believe this third-hand or fourth-hand information to be true absent any substantiation. *Cf. Rice v. Department of Agriculture*, 97 M.S.P.R. 501 (2004) (finding an appellant's belief to be based on more than an unsubstantiated rumor when he named the sources of his information and referred to specific documents evidencing wrongdoing).

The appellant argues that the fact that OIG found the allegation to be worthy of an investigation provides additional evidence that a belief that wrongdoing had occurred was reasonable. PFR File, Tab 5 at 14. Under the circumstances of this case, where the unreasonableness of the belief pertains to the veracity of the information rather than whether the information evidences wrongdoing under section 2302(b)(8), we disagree that a subsequent OIG investigation provides much weight. *Cf. Armstrong v. Department of Justice*, 107 M.S.P.R. 375, 384 n.6 (2007) (finding that the agency's investigation into allegedly arbitrary promotion practices weighed in the appellant's favor regarding the issue of whether the appellant reasonably believed the practices constituted an abuse of authority), *overruled on other grounds by Edwards*, 2022 MSPB 9, ¶¶ 18-20. We agree with the administrative judge that the appellant did not nonfrivolously allege that disclosure 1 was a protected disclosure under section 2302(b)(8) because he lacked a reasonable belief that the wrongdoing had occurred.

The administrative judge provided another reason for why the appellant's disclosure was not protected: the appellant was merely performing his normal duties when he learned of the alleged misconduct. ID at 13. The appellant challenges this finding on review. PFR File, Tab 5 at 14-15. We agree with the appellant that the administrative judge's finding was erroneous because the enactment of the WPEA superseded the case law on which she relied. WPEA, Pub. L. No. 112-199, § 101(b)(2)(C), 126 Stat. 1465, 1466 (codified at 5 U.S.C. § 2302(f)(2) (2012)); *see Salazar v. Department of Veterans Affairs*, 2022 MSPB 42, ¶¶ 10-11. Under the WPEA, a whistleblower is not deprived of protection just

because the disclosure was made in the normal course of an employee's duties.[5] *Salazar*, 2022 MSPB 42, ¶ 10. Nevertheless, this fact does not affect our finding that the appellant has not made nonfrivolous allegations that his disclosure was protected under section 2302(b)(8).

The appellant nonfrivolously alleged that he engaged in protected activity.

Disclosures 2 and 3 pertain to the appellant's alleged cooperation with OIG. IAF, Tab 17 at 6-7; PFR File Tab 5 at 8. The administrative judge considered these alleged disclosures as alleged protected activity under section 2302(b)(9)(A)(i), which includes "the exercise of any appeal, complaint, or grievance right granted by any law, rule, or regulation . . . with regard to remedying a violation of [section 2302(b)(8)]." ID at 13-14. Having found that the appellant's act of handing over files to OIG did not seek to remedy alleged whistleblower reprisal under section 2302(b)(8), and that OIG's investigation stemmed from the appellant's discovery while performing his normal duties, she concluded that the appellant failed to nonfrivolously allege that he engaged in protected whistleblower activity. ID at 14.

On review, the appellant argues that cooperation with an OIG investigation is expressly protected under 5 U.S.C. § 2302(b)(9)(C) and, thus, he nonfrivolously alleged that he engaged in protected activity. PFR File, Tab 5 at 16-17. We agree. Under 5 U.S.C. § 2302(b)(9)(C), "cooperating with or disclosing information to the Inspector General (or any other component responsible for internal investigation or review) of an agency, or the Special Counsel, in accordance with applicable provisions of law" is a protected

---

[5] Disclosures made in an employee's normal course of duties fall under the generally applicable 5 U.S.C. § 2302(b)(8) unless the employee's principal job function is to regularly investigate and disclose wrongdoing. *See Salazar*, 2022 MSPB 42, ¶¶ 10-11. An employee whose principal job function is to regularly investigate and disclose wrongdoing must meet a slighter higher burden to show that his disclosure is protected. *Id.*; *see* 5 U.S.C. § 2302(f)(2). Considering our finding that the appellant has not nonfrivolously alleged that he made a protected disclosure under 2302(b)(8), we need not determine whether the slightly higher burden applies here.

whistleblower activity. *See Edwards*, 2022 MSPB 9, ¶ 29.[6] Furthermore, unlike protected "disclosures" under 5 U.S.C. § 2302(b)(8), 5 U.S.C. § 2302(b)(9)(C) does not require proof that the employee has a reasonable belief that he is disclosing wrongdoing. *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶ 62. Here, the appellant alleges that, in January 2019, he provided OIG all his case files related to the investigation of horse trainers at Belmont at OIG's request (disclosure 2), and, beginning in February 2019, he began assisting an OIG investigator by wearing a hidden recording device to the office to record his conversations with his first-line supervisor (disclosure 3).[7] IAF, Tab 17 at 6-7, 83-85. These allegations clearly give rise to the Board's jurisdiction under section 2302(b)(9)(C).

<u>The appellant nonfrivolously alleged that he was subjected to at least one personnel action.</u>

The Board has jurisdiction when the appellant exhausts his administrative remedies before OSC and makes a nonfrivolous allegation that at least one alleged personnel action was taken in reprisal for at least one alleged protected disclosure or activity. *Skarada*, 2022 MSPB 17, ¶ 13. Under the WPEA, "personnel actions" are defined as follows: (i) appointments; (ii) promotions;

---

[6] Because the appellant's alleged activity occurred after December 12, 2017, it falls within the coverage of section 2302(b)(9)(C) as amended by section 1097(c)(1) of the National Defense Authorization Act of 2018, Pub. L. No. 115-91, 131 Stat. 1283 (2017).

[7] In response to the appellant's petition for review, the agency argues that these alleged activities are too vague to satisfy the nonfrivolous allegation standard. PFR File, Tab 11 at 13. Regarding "disclosure" 2, the agency argues that the appellant was required to allege to whom and how OIG made the file request and how the file was collected. *Id.* Regarding "disclosure" 3, the agency argues that his assertion that he was a cooperating witness is a mere bald allegation. *Id.* at 14. As the U.S. Court of Appeals for the Federal Circuit has explained: "[T]he question of whether the appellant has non-frivolously alleged protected disclosures [or activities] that contributed to a personnel action must be determined based on whether the employee alleged sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Hessami v. Merit Systems Protection Board*, 979 F.3d 1362, 1364, 1369 (Fed. Cir. 2020); *see also Gabel v. Department of Veterans Affairs*, 2023 MSPB 47 at 6-7, 83-85.

(iii) actions under 5 U.S.C. chapter 75 or other disciplinary or corrective actions; (iv) details, transfers, or reassignments; (v) reinstatements; (vi) restorations; (vii) reemployments; (viii) performance evaluations under 5 U.S.C. chapter 43 or under Title 38; (ix) decisions regarding pay, benefits, or awards, or involving education or training if it reasonably may be expected to lead to an appointment, promotion, performance evaluation, or other action described in 5 U.S.C. § 2302(a)(2)(A); (x) decisions to order psychiatric testing or examination; (xi) implementations or enforcements of any nondisclosure policy, form, or agreement; and (xii) any other significant changes in duties, responsibilities, or working conditions.  5 U.S.C. § 2302(a)(2)(A); *Cooper v. Department of Veterans Affairs*, 2023 MSPB 24, ¶ 9.

The appellant alleges that, beginning in January 2019, after he turned over his files to OIG, his first-line supervisor engaged in the following retaliatory actions:  assigned him menial tasks, micro-managed his investigations, and gave substantial resistance to his attempts to move cases forward.  IAF, Tab 17 at 6; PFR File, Tab 5 at 9.  Sometime following, his second-line supervisor refused his request for a new first-line supervisor.  IAF, Tab 17 at 7; PFR File, Tab 5 at 9.  He also alleges that, in October 2019, his first-line supervisor gave him a negative performance review by rating him "minimally successful," and he was subject to a denial of a within-grade pay increase as a result.  ID at 11; IAF, Tab 17 at 7; PFR File, Tab 5 at 9.  We find that the appellant has made nonfrivolous allegations of at least one personnel action—under section 2302(a)(viii), (ix), or (xii).

<u>The appellant nonfrivolously alleged that the protected activity was a contributing factor in the agency's decision to take or fail to take an alleged personnel action.</u>

The last element to Board jurisdiction over an IRA appeal is for the appellant to nonfrivolously allege that his protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action.  *Carney v. Department of Veterans Affairs*, 121 M.S.P.R. 446, ¶ 7 (2014).  An employee

may establish, for jurisdictional purposes, that a protected activity was a contributing factor to covered personnel actions through circumstantial evidence, such as the acting official's knowledge of the protected activity and the timing of the personnel actions. *Id.* An appellant's nonfrivolous allegation that the official taking the personnel action knew of the protected activity and that the personnel action occurred within a period of time such that a reasonable person could conclude that the activity was a contributing factor in the personnel action is sufficient to meet the knowledge/timing test and to satisfy the appellant's burden to make a nonfrivolous allegation of a contributing factor. *Id.* The Board has held that personnel actions occurring within 1 to 2 years of the protected disclosure or activity are sufficient to meet the timing prong of the knowledge/timing test. *Pridgen*, 2022 MSPB 31, ¶ 63.

Here, the appellant alleges that his first-line supervisor believed that he disclosed information about the possible improper settlement to OIG, prompting its investigation in January 2019. IAF, Tab 17 at 6. He further alleged that, after OIG agents arrived at the Long Island District Office in January 2019 and requested all files related to wage investigations, his first-line supervisor began pressuring him to change his calculation of overtime damages in his investigation to make his findings appear consistent with the case that was being investigated. *Id.* at 6-7, 20; PFR File, Tab 5 at 13. From this allegation, we easily infer a premise that the first-line supervisor knew that appellant was or would be providing these files to OIG. Finally, the appellant alleges that all employees in the office found out about his disclosures and/or activities after he complained to his second-line supervisor and requested a change in supervisor, and that several individuals in the office advised him that he was being targeted because of his cooperation with OIG. PFR File, Tab 17 at 24.

Because the appellant has made nonfrivolous allegations that the agency actors involved in the personnel actions believed that he cooperated with or disclosed information to OIG, he has satisfied the knowledge prong of the

knowledge/timing test at the jurisdictional stage.[8]  *See, e.g., Carney*, 121 M.S.P.R. 446, ¶¶ 7-12 (2014).  Furthermore, the appellant has satisfied the timing prong of the knowledge/timing test, as all alleged personnel actions occurred within 1 year of the appellant's alleged protected activity.  *See Pridgen*, 2022 MSPB 31, ¶ 63.  Thus, we conclude that the appellant's allegations are sufficient to meet the contributing factor criterion under the knowledge/timing test at the jurisdictional stage.

## ORDER

Having found that the appellant has met his jurisdictional burdens, we conclude that he is entitled to a hearing on the merits of his claim.  *Salerno*, 123 M.S.P.R. 230, ¶ 5.  We remand this case to the field office for further adjudication in accordance with this Order.[9]

FOR THE BOARD:

_____

*Jennifer Everling*

Jennifer Everling
Acting Clerk of the Board

Washington, D.C.

---

[8] At this stage, we need not determine whether the appellant has made nonfrivolous allegations that the agency actors knew all the specifics of his cooperation in the OIG investigation, e.g., his alleged activity of wearing the recording device to the office to record conversations with his first-line supervisor (disclosure 3).

[9] In the remand initial decision, the administrative judge may reincorporate prior findings as appropriate, consistent with this Remand Order.