# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

RICK HALTERMAN,
          Appellant,

      v.

DEPARTMENT OF HOMELAND
    SECURITY,
          Agency.

DOCKET NUMBER
SF-1221-23-0231-W-1

DATE: August 13, 2024

## THIS ORDER IS NONPRECEDENTIAL[1]

<u>Renee S. Moore</u>, Esquire, Rochester, New York, for the appellant.

<u>Micah Yang</u>, Esquire, San Diego, California, for the agency.

### BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member*

*Member Kerner did not participate in the adjudication of this appeal.

### REMAND ORDER

¶1      The appellant has filed a petition for review of the initial decision, which dismissed his individual right of action (IRA) appeal for lack of jurisdiction. For the reasons discussed below, we GRANT the appellant's petition for review, REVERSE the initial decision's finding that the appellant did not administratively

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

exhaust his alleged May 2022 disclosure, FIND that the appellant nonfrivolously alleged that his May 2022 disclosure was protected and a contributing factor in two of the personnel actions at issue, AFFIRM the remainder of the initial decision, and REMAND the case to the Western Regional Office for further adjudication in accordance with this Remand Order.

## BACKGROUND

¶2     In November 2022, the appellant, a Deportation Officer, filed a whistleblower reprisal complaint with the Office of Special Counsel (OSC). Initial Appeal File (IAF), Tab 1 at 7, Tab 9 at 7, 20-36.  OSC issued the appellant a close-out letter, and the appellant timely filed an IRA appeal with the Board. IAF, Tab 1.  In response to the administrative judge's order to submit evidence and argument regarding the Board's jurisdiction, the appellant alleged that the agency retaliated against him for two protected disclosures he made in May and July 2022, respectively, as well as a grievance he filed in June 2022 through six personnel actions, specifically:  (1) the May 2022 discontinuation of his Health Improvement Program (HIP) privileges; (2) the July 2022 suspension of his law enforcement authorities and assignment to administrative duties; (3) his July 2022 decertification from certain overtime privileges; (4) the July 2022 notice of proposed removal based on his alleged misconduct; (5) the October 2022 mitigation of his proposed removal to a 14-day suspension; and (6) his Fiscal Year (FY) 2022 performance appraisal.  IAF, Tab 3, Tab 9 at 4-18.

¶3     The administrative judge dismissed the appeal for lack of jurisdiction without holding a hearing.  Initial Appeal File (IAF), Tab 12, Initial Decision (ID).  The administrative judge found that the appellant did not exhaust administrative remedies for the alleged May and July 2022 disclosures, but that he did exhaust administrative remedies for the June 2022 grievance and all six personnel actions.  ID at 5-7.  The administrative judge then found that, because the June 2022 grievance did not seek to remedy whistleblower reprisal, the

alleged reprisal for the grievance fell in the category of prohibited personnel practices under 5 U.S.C. § 2302(b)(9)(A)(ii) over which the Board lacked IRA jurisdiction under 5 U.S.C. § 1221(a). ID at 7-8 (citing *McCray v. Department of the Army*, 2023 MSPB 10, ¶ 12). The administrative judge found the appellant's argument that the grievance amounted to a protected disclosure unavailing, on the ground that disclosures made in the course of exercising grievance rights could only receive protection under 5 U.S.C. § 2302(b)(9), and not under 5 U.S.C. § 2302(b)(8). ID at 8 (citing *McCray*, 2023 MSPB 10, ¶ 18).

¶4      The appellant filed a petition for review in which he challenges the administrative judge's adverse exhaustion findings. Petition for Review (PFR) File, Tab 1. The agency filed a response. *Id.*, Tab 3.

**ANALYSIS**

The appellant exhausted administrative remedies for his alleged May 2022 disclosure.

¶5      An appellant in an IRA appeal must exhaust administrative remedies by seeking corrective action from OSC before seeking corrective action from the Board. *Chambers v. Department of Homeland Security*, 2022 MSPB 8, ¶ 10. The substantive requirements of exhaustion are met when an appellant has provided OSC with sufficient basis to pursue an investigation. *Id.* The purpose of requiring an appellant to exhaust his remedies with OSC before filing an IRA appeal with the Board is to give OSC the opportunity to take corrective action before involving the Board in the case. *Id.* Thus, the Board's jurisdiction over an IRA appeal is limited to those issues that have been previously raised with OSC. *Id.*

¶6      The administrative judge found that the appellant did not exhaust administrative remedies regarding the May 2022 disclosure because his OSC complaint identified the date of his whistleblowing exclusively as June 30, 2022, while his vague reference to earlier conversations did not sufficiently notify OSC

of the May 2022 disclosure. ID at 5-6. We disagree with the administrative judge's conclusion, which overlooked the portion of the appellant's OSC complaint that raised his alleged May 2022 disclosure. In his OSC complaint, the appellant asserted that he emailed a grievance on June 30, 2022, to an Assistant Field Office Director (AFOD) alleging a collective bargaining agreement violation in the management of Deportation Officers' workloads. IAF, Tab 1 at 88, Tab 9 at 25-26, 28-29. The appellant also alleged in his OSC complaint that he disclosed during a verbal conversation with a Supervisory Detention and Deportation Officer (SDDO) that, among other things, he and other Deportation Officers were not properly screening cases, and his management's reports based on expired "call-ups" were based on false information. IAF, Tab 9 at 29. Although the appellant did not explain to OSC, as he did during the Board appeal, that this conversation occurred in the beginning of May 2022, *id.* at 10, the complaint provided OSC with a sufficient basis to investigate the alleged conversation as separate and distinct whistleblowing from the appellant's June 30, 2022 emailed grievance. The appellant's failure to provide the date of the conversation in his OSC complaint was immaterial under these circumstances, as an appellant may give a more detailed account of his whistleblowing activities before the Board than he did to OSC. *Chambers*, 2022 MSPB 8, ¶ 10. We thus find that the appellant exhausted administrative remedies for his alleged May 2022 disclosure.[2]

_____

[2] On review, the appellant, who was represented throughout his Board appeal, submits an amicus brief filed in a different case, which he did not submit below, to support his argument that the administrative judge failed to consider that he was pro se when he filed his OSC complaint in analyzing exhaustion. PFR File, Tab 1 at 10-11, 19-48. Because the appellant does not show this new evidence was previously unavailable despite due diligence, we need not consider it or the arguments therein. *Clay v. Department of the Army*, 123 M.S.P.R. 245, ¶ 6 (2016); *Avansino v. U.S. Postal Service*, 3 M.S.P.R. 211, 213-14 (1980). Nevertheless, for the above reasons, we find the exhaustion requirement satisfied for the appellant's claimed May 2022 disclosure, even without giving his pro se status special consideration.

¶7 We agree with the administrative judge, however, that the appellant did not exhaust his administrative remedies for his claimed July 2022 disclosure. Even reading the appellant's OSC complaint broadly, we agree with the administrative judge that the complaint neither claimed nor suggested that the appellant—who knew how to inform OSC of protected disclosures he made or activities he engaged in, IAF, Tab 9 at 25-26, 28-29—made a protected disclosure in July 2022. ID at 6.

The appellant nonfrivolously alleged that his May 2022 disclosure was protected under 5 U.S.C. § 2302(b)(8).

¶8 If an appellant has exhausted his administrative remedies before OSC, he can establish Board jurisdiction over an IRA appeal by nonfrivolously alleging that: (1) he made a protected disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a)(2)(A). *Chambers*, 2022 MSPB 8, ¶ 14. A nonfrivolous allegation of a protected whistleblowing disclosure is an allegation of fact that, if proven, would show that the appellant disclosed a matter that a reasonable person in his position would believe evidenced one of the categories of wrongdoing specified in 5 U.S.C. § 2302(b)(8). *Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶ 12.

¶9 The appellant explained below that he reasonably believed his alleged May 2022 disclosure evidenced, among other things, a violation of policy regarding the reporting of case-vetting and expired "call-ups," i.e., events in immigration removal proceedings which did not occur by their statutory deadlines. IAF, Tab 9 at 10-12. The appellant further explained that management's reports of expired call-ups, which were based on data falsified by officers, disguised the statuses of removal subjects. *Id.* at 12. Based on these assertions, we find that a reasonable person in the appellant's position would have believed his alleged May 2022

disclosure evidenced, at minimum, a violation of law, rule, or regulation. *See Johns v. Department of Veterans Affairs,* 95 M.S.P.R. 106, ¶¶ 9-10 (2003) (finding that an allegation that employees made false statements to Federal agencies regarding firearms qualification scores nonfrivolously alleged a disclosure of a violation of law, rule, or regulation). We thus find that the appellant nonfrivolously alleged that he made a disclosure protected under 5 U.S.C. § 2302(b)(8).

The appellant nonfrivolously alleged that his May 2022 disclosure was a contributing factor in the agency's decision to take a personnel action.

¶10    To satisfy the contributing factor criterion at the jurisdictional stage, an appellant need only raise a nonfrivolous allegation that the fact of, or content of, the protected disclosure or activity was one factor that tended to affect the personnel action in any way. *Chambers*, 2022 MSPB 8, ¶ 14. One way to establish this criterion is the knowledge/timing test, under which an employee may nonfrivolously allege that the disclosure or activity was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official taking the personnel action knew of the disclosure or activity, and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure or activity was a contributing factor in the personnel action. *Id.*, ¶ 15.

¶11    One of the actions which the appellant alleged constituted whistleblower reprisal was the discontinuation of his HIP privileges. IAF, Tab 9 at 16. According to local agency policy, various employees, including Deportation Officers, were permitted under the HIP to use up to three duty hours per week for physical exercise. IAF, Tab 11 at 580-83. With his response to the jurisdictional order, the appellant attached a May 11, 2022 email from the SDDO to whom he claimed to have made the early May 2022 disclosure informing him that, "[a]s discussed during [their] meeting," his HIP privileges were being discontinued to

provide him more time to address the high number of expired call-ups on his docket. IAF, Tab 9 at 40.

¶12 We find that the appellant nonfrivolously alleged that the discontinuation of his HIP privileges, which the agency granted to Deportation Officers and other employees in the appellant's location based on a general practice, qualified as a personnel action as a "decision concerning . . . benefits" under 5 U.S.C. § 2302(a)(2)(A)(ix). *See Arauz v. Department of Justice*, 89 M.S.P.R. 529, ¶¶ 18-19 (2001) (finding that a showing that an agency denied a request for administrative leave in circumstances in which it had a general practice of granting such leave establishes the denial of a benefit under 5 U.S.C. § 2302(a)(2)(A)(ix)). Further, the SDDO was alleged to have known of the appellant's early May 2022 disclosure as its purported recipient and to have discontinued the appellant's HIP privileges less than 10 days later, while the SDDO's email indicates that he possibly discontinued the appellant's HIP privileges in response to the appellant's disclosure. IAF, Tab 9 at 16, 40. The appellant thus nonfrivolously alleged that his May 2022 disclosure was a contributing factor in the discontinuation of his HIP privileges through both the knowledge/timing test and objective evidence. *See Cooper v. Department of Veterans Affairs*, 2023 MSPB 24, ¶ 20 (stating that personnel actions alleged to have begun within 1 to 2 years of an appellant's protected disclosures satisfy the timing prong of the knowledge/timing test).

¶13 We find that the appellant did not, however, nonfrivolously allege that his May 2022 disclosure was a contributing factor in the remaining personnel actions through the knowledge/timing test. None of those other actions was taken by the SDDO to whom the appellant made the disclosure, and apart from conclusory assertions that the remaining personnel actions constituted whistleblower reprisal based on their timing, the appellant did not allege that the individuals responsible for those actions actually knew of his alleged May 2022 disclosure. IAF, Tab 9 at 13-18, 29.

¶14    If an appellant fails to satisfy the knowledge/timing test, the Board must consider other evidence, such as that pertaining to the strength or weakness of the agency's reasons for taking the personnel action, whether the whistleblowing was personally directed at the proposing or deciding official, and whether those individuals had a desire or motive to retaliate against the appellant. *Chambers*, 2022 MSPB 8, ¶ 15; *Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶ 15 (2012). The appellant claimed that a second SDDO retaliated against him through his performance appraisal based on the issue of expired call-ups—the subject of his alleged May 2022 disclosure. IAF, Tab 9 at 10, 13-14. The appellant's FY 2022 performance appraisal contained a September 2022 note from this other SDDO stating that the appellant "needs improvement on timeliness of clearing out case call-ups," while asserting that the appellant needed "moderate supervisory oversight" due to this deficiency. IAF, Tab 11 at 83. The appellant was rated "fully successful" in the custody operations performance element based on these and other assessments. *Id.* at 82-83. From the available record, except for this one instance, the appellant had only received "outstanding" or "excellent" ratings on his individual performance elements, including on the custody operations element in previous years. *Id.* at 81-94, 150-92. Further, the appellant claimed that the rating SDDO was among those responsible for the reporting of false call-up numbers, which could evidence retaliatory motive if proven. IAF, Tab 9 at 13. On this record, we find that the appellant non-frivolously alleged that his May 2022 disclosure was a contributing factor in his FY 2022 performance appraisal, a personnel action under 5 U.S.C. § 2302(a)(2)(A)(viii).

¶15    The appellant did not, however, nonfrivolously allege that his May 2022 disclosure was a contributing factor in the remaining personnel actions, even considering the factors set forth in *Dorney*. Those personnel actions—the July 2022 suspension of his law enforcement authorities and assignment to administrative duties, the July 2022 decertification of his administratively uncontrollable overtime privileges, the July 2022 notice of proposed removal, and

the October 2022 14-day suspension—stemmed from allegations that he showed a co-worker a video of a sexual nature on his cellphone at a retirement party, then lacked candor when questioned about his actions during the resulting investigation. IAF, Tab 1 at 82-85, Tab 9 at 6-7, 37-38, Tab 11 at 37-39, 131-34, 385-86. The record indicates that the agency's reasons for taking the personnel actions were strong. *See Dorney*, 117 M.S.P.R. 480, ¶ 15 (stating that evidence pertaining to the strength or weakness of the agency's reasons for taking the personnel action is relevant in determining the contributing factor criterion). Even accepting as true, as we must at this stage, the appellant's argument that the co-worker's report was not credible, the appellant's own admissions to possessing intimate videos on his phone, as well as other evidence the appellant either filed himself or did not contest below, tends to confirm his misconduct. IAF, Tab 1 at 57-59, 63-65, Tab 9 at 17, Tab 11 at 116-17, 224, 278. Although the deciding official did not sustain either specification of the lack of candor charge, the evidence supporting the charge—which the appellant also either filed himself or did not contest below—was still strong. IAF, Tab 1 at 19-21, 41-43, 83, Tab 11 at 131, 305. Further, the investigation into the appellant's misconduct leading to the personnel actions, which concluded in May 2022, began well before the appellant's May 2022 disclosure.[3] IAF, Tab 11 at 262-70.

_____

[3] We recognize the warning of the U.S. Court of Appeals for the Federal Circuit in *Hessami v. Merit Systems Protection Board*, 979 F.3d 1362, 1369 (Fed. Cir. 2020that jurisdiction over a whistleblower reprisal appeal must be determined based on whether an appellant alleged sufficient factual matter, accepted as true, to state a claim that is plausible on its face, and that the Board may not deny jurisdiction by crediting the agency's interpretation of the evidence. Here, we are careful to only consider the agency's documentary submissions to the extent they do not contradict the allegations the appellant offers in support of jurisdiction. *See Ferdon v. U.S. Postal Service*, 60 M.S.P.R. 325, 329 (1994) (stating that the Board may consider an agency's documentary submissions in determining whether an appellant has made a nonfrivolous allegation of jurisdiction, but to the extent the agency's evidence constitutes mere factual contradiction of the appellant's otherwise adequate prima facie showing of jurisdiction, the Board may not weigh evidence and resolve conflicting assertions of the parties and the agency's evidence may not be dispositive).

¶16      Finally, the appellant's description of his May 2022 disclosure did not allege wrongdoing by any specific person, and the officials the appellant claimed were involved in the wrongdoing evidenced by his disclosure did not include the officials responsible for the remaining personnel actions.[4] IAF, Tab 9 at 10, 13. The appellant thus did not nonfrivolously allege contributing factor for the remaining personnel actions through retaliatory motive or any other evidence upon which contributing factor may be shown.

<u>The appellant established jurisdiction over his appeal, which we remand for adjudication on the merits.</u>

¶17      For these reasons, we find that the appellant established jurisdiction over his appeal and we remand it for further adjudication. On remand, the administrative judge shall hold the appellant's requested hearing. IAF, Tab 1 at 2. He shall then determine whether the appellant met his burden of proving by preponderant evidence that he made his claimed May 2022 disclosure—the only alleged whistleblowing remaining at issue—and that it was protected under 5 U.S.C. § 2302(b)(8). If the administrative judge finds that the appellant made a protected disclosure, he shall decide whether the appellant established that the disclosure was a contributing factor in a personnel action, with the May 2022 discontinuation of his HIP privileges and his FY 2022 performance appraisal being the only nonfrivolously alleged personnel actions within the Board's jurisdiction. If the appellant establishes by preponderant evidence that he made a

---

[4] The appellant alleged that the individuals who served him with, or conveyed to him the contents of, the July 2022 memorandum that suspended his law enforcement authorities, placed him on administrative duties, and effectively disallowed him from working overtime—the AFOD and the rating SDDO for his FY 2022 performance appraisal—were responsible for the false call-up reports he disclosed. IAF, Tab 9 at 6-7, 13. But the record shows that the officials involved in the decision to take the personnel actions effected by the July 2022 memorandum were different officials whom the appellant neither identified in his claimed disclosure nor alleged to have any retaliatory motive against him. IAF, Tab 11 at 37-38, 385-86. The evidence we consider here is entirely consistent with the July 2022 memorandum—which the appellant filed into the record and which identifies its issuing official—being served on or communicated to him by his immediate supervisors, as he asserts. IAF, Tab 9 at 13, 37-38.

protected disclosure that was a contributing factor in a personnel action, then the administrative judge shall determine whether the agency established by clear and convincing evidence that it would have taken the personnel action in the absence of the disclosure.

## ORDER

¶18     For the reasons discussed above, we remand this case to the Western Regional Office for further adjudication in accordance with this Remand Order.


*Gina K. Grippando*

FOR THE BOARD:          _____

                        Gina K. Grippando
                        Clerk of the Board

Washington, D.C.