# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| RANDY CARROLL LECOMPTE,<br>Appellant, | DOCKET NUMBER<br>DC-1221-20-0765-W-1 |
| v. | |
| DEPARTMENT OF STATE,<br>Agency. | DATE: October 3, 2024 |

# THIS ORDER IS NONPRECEDENTIAL[1]

Randy Carroll LeCompte, Castroville, Texas, pro se.

Camille V'Estres, Christine Hulsizer, and Marianne Perciaccante, Washington, D.C., for the agency.

Gerard Riddick, Clarksburg, Maryland, for the agency.

### BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member*

*Member Kerner recused himself and did not participate in the adjudication of this appeal.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

## REMAND ORDER

¶1      The appellant has filed a petition for review of the initial decision, which dismissed his individual right of action (IRA) appeal for lack of jurisdiction. For the reasons discussed below, we GRANT the appellant's petition for review, VACATE the initial decision, FIND that the appellant met his jurisdictional burden for some claims, and REMAND the case to the regional office for further adjudication in accordance with this Remand Order.

## BACKGROUND

¶2      The appellant accepted a temporary appointment in 2011 as a Program Manager, Contracting Officer's Representative, within the agency's Near Eastern Affairs (NEA) Bureau, stationed in Iraq. Initial Appeal File (IAF), Tab 1 at 11, 15. In 2013, the agency converted his employment to a limited non-career appointment. *Id*. at 11, 15-16. In mid-2014, he left Iraq for what was planned to be a brief rest, but the agency subsequently instructed him to report to Washington, D.C., instead of returning to Iraq. IAF, Tab 1 at 16, Tab 6 at 18. He worked from there until late 2014, at which point the agency assigned him to Frankfurt, Germany, to oversee a newly established Contract Management Office. IAF, Tab 1 at 11, 16, Tab 6 at 18. The office was intended to provide oversight of high-value contracts throughout the Near Eastern and South-Central Asian Affairs region (NEA-SCA). IAF, Tab 1 at 16. During his time in Germany, the appellant described himself as serving as the Director of his office until 2017, when the agency restructured and abolished his position. *Id*. at 12.

¶3      In April 2017, the appellant filed a complaint with the Office of Special Counsel (OSC), alleging whistleblower reprisal. IAF, Tab 1 at 21-29. He made a more detailed follow-up submission to OSC in January 2018. IAF, Tab 6 at 16-31. In May 2020, OSC sent him a closeout letter, indicating that it would not take further action on the matter and informing the appellant of how he could

seek corrective action with the Board. IAF, Tab 1 at 30-32. The appellant subsequently filed this IRA appeal.

¶4 The administrative judge issued an order, explaining the Board's jurisdictional limitations, IAF, Tab 3 at 1-6, and instructing the appellant to provide a list of specific information for purposes of meeting his jurisdictional burden, *id*. at 7-8. In particular, the administrative judge ordered the appellant to file a statement, accompanied by evidence, listing the following: (1) his protected disclosures or activities; (2) the dates he made the disclosures or engaged in the activities; (3) the individual to whom he made any disclosures; (4) why his belief in the truth of any disclosures was reasonable; (5) the actions the agency took or failed to take, or threatened to take or fail to take, against him because of his disclosures or activities; (6) why he believes a disclosure or activity, or a perception of such a disclosure or activity, was a contributing factor to the actions; and (7) the matters he raised in his OSC complaint and any amendments. *Id*. at 7. The appellant provided a narrative response, IAF, Tab 6 at 4-7, along with several pieces of evidence, *id*. at 11-53, including his January 2018 submission to OSC, *id*. at 16-31. The appellant also submitted several additional pleadings, containing more than 1,000 pages of evidence, without any significant explanation of how the evidence met his jurisdictional burden. IAF, Tabs 11-18.

¶5 The agency filed a motion to dismiss for lack of jurisdiction. IAF, Tab 19. Among other things, the agency argued that the appellant had not complied with the specific requirements of the administrative judge's order—he had instead submitted voluminous evidence without contextualizing the same under the framework of Board jurisdiction. *Id*. at 6-7 & n.2. The agency further argued that, even when construed liberally, the appellant's pleadings did not satisfy his jurisdictional burden. *Id*. at 8-17.

¶6 After the agency's motion to dismiss, the appellant referred to his pro se status and unfamiliarity with Board proceedings, while requesting a conference.

IAF, Tab 20 at 4. The administrative judge held a conference, in which he explained that he would soon rule on jurisdiction, based upon the written record. IAF, Tab 22.

¶7    In an initial decision, the administrative judge dismissed the appeal for lack of jurisdiction. He first found that the appellant had exhausted his remedy before OSC regarding his not being allowed to return to Iraq in 2014; his having suffered delays regarding his employee evaluation reports (EERs); problems with his wife's medical evacuation; and the agency's refusal to extend his appointment, resulting in his alleged involuntary separation from the agency. ID at 4. The administrative judge then found that, even if the alleged whistleblowing was protected, the appellant failed to nonfrivolously allege that this motivated or contributed to the personnel actions acknowledged by OSC. ID at 4-8. The administrative judge further explained that the appellant described numerous people involved in various decisions, suggesting that they conspired to retaliate against him, but that his claims, without more, amounted to mere speculation. ID at 7-9. He also explained that the appellant's claim that everyone knew he was a whistleblower did not amount to a nonfrivolous allegation of a causal connection between his disclosures and the agency's decision to take or not to take a personnel action against him. ID at 10. The administrative judge concluded, therefore, that the Board lacked jurisdiction over the appeal. ID at 1, 10-11.

¶8    The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 1. The agency has filed a response, PFR File, Tab 3, to which the appellant has replied, PFR File, Tab 4.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶9    As an initial matter, we agree with the administrative judge's overarching conclusion that the appellant's pleadings below are difficult to reconcile with his jurisdictional burden. *E.g.*, IAF, Tabs 6, 11-18. Additionally, his petition for review contains extensive allegations about his alleged whistleblowing and

reprisal, without explaining in any detail why the initial decision was incorrect. PFR File, Tab 1 at 4-32. His petition only briefly mentions the administrative judge or the initial decision, and it cites almost nothing from the record below. *See* 5 C.F.R. § 1201.114(b) (providing that a petition for review must state a party's objections to the initial decision, including all of the party's legal and factual arguments, and must be supported by specific references to the record and any applicable laws or regulations).

¶10      Nonetheless, the Board will construe a pro se appellant's claims liberally because a pro se appellant is not expected to plead the issues with the same precision as would be expected of an attorney. *Farooq v. Corporation for National and Community Service*, 109 M.S.P.R. 73, ¶ 11 (2008). More importantly, the administrative judge seemingly overlooked a key document when he concluded that the appellant failed to meet his jurisdictional burden. That document, which is not cited or referenced in the initial decision, is the appellant's January 2018 follow-up submission to OSC. *Compare* ID at 4-11, *with* IAF, Tab 6 at 16-31. This document best explains his allegations of whistleblower reprisal, while also serving as key evidence for the exhaustion element of his jurisdictional burden. IAF, Tab 6 at 16-31. As further detailed below, this January 2018 document sufficed to establish jurisdiction over some of his claims and therefore requires that we remand this IRA appeal for further adjudication.

The appellant proved that he exhausted numerous claims with OSC.

¶11      Under 5 U.S.C. § 1214(a)(3), to establish Board jurisdiction over an IRA appeal, an appellant must prove by preponderant evidence that he exhausted his administrative remedies with OSC before seeking corrective action from the Board. *Chambers v. Department of Homeland Security*, 2022 MSPB 8, ¶ 10. The substantive requirements of exhaustion are met when an appellant has provided OSC with a sufficient basis to pursue an investigation. *Id*. The purpose of the exhaustion requirement is to give OSC the opportunity to take corrective action

before involving the Board in the case. *Id*. Thus, the Board's jurisdiction in an IRA appeal is limited to those issues that have been raised with OSC. *Id*. An appellant, however, may give a more detailed account of the whistleblowing or protected activity before the Board than was given to OSC. *Id*.

¶12    The appellant submitted with his initial Board appeal his OSC complaint from April 2017. IAF, Tab 1 at 21-29. It included general allegations that the appellant made "protected disclosures concerning waste and mismanagement within the Near Eastern Affairs (NEA) Region to the Middle East Regional Office (MERO)." *Id*. at 24. It also generally alludes to some disclosures to a local Office of Inspector General (OIG) along with various wrongdoing as it relates to a requested extension of his tour with the agency and his wife's medical treatment. *Id*. at 24-25, 27.

¶13    The appellant provided a far more extensive set of allegations in his January 2018 follow-up submission to OSC. IAF, Tab 6 at 16-31. He detailed five sets of disclosures and the alleged reprisal that followed.

¶14    In his first set of disclosures and reprisal, the appellant described a June 2014 disclosure concerning the use of jet fuel in Baghdad, at a cost of approximately $10,000 per day more than the diesel fuel that was in current use. *Id*. at 16-17. He also described a disclosure, in July 2014, as part of a risk assessment, that included a wide range of alleged wrongdoing ranging from unethical relationships between Government officials and contractors to violations of Governmental contracts and insufficient medical personnel. *Id*. at 17. According to the appellant, the retaliation he suffered as a result of this first set of disclosures included a change in his duty station from Iraq to Washington, D.C., and then Germany; his Washington, D.C. supervisor's failure to complete his EER in a timely manner; the denial of necessary resources to succeed in his position while in Germany; the denial of overtime pay that was due to him; another instance of an EER not being completed in a timely manner; an investigation of his operation in Germany by a consultant; a follow-up

investigation by a special management advisor; and a denial of requested resources. *Id*. at 18-21. All of these alleged acts of reprisal occurred between the period just weeks after his disclosures and May 2016. *Id*.

¶15    In his second set of disclosures and reprisal, the appellant described December 2016 reports he made to the Director of the MERO OIG. According to the appellant, these reports generally involved what he perceived to be mismanagement as it related to work between his office in Germany and coverage for Iraq, along with the improper selections of unqualified individuals for vacant positions in the Germany office. *Id*. at 21. The appellant alleged that, soon after an OIG report that followed, the agency retaliated by not extending his tour in Germany, as it had previously planned to do. *Id*. at 22.

¶16    In his third set of disclosures and reprisal, the appellant described meeting with the agency's OIG again, in February 2017, to discuss contract problems involving food services in Iraq as it related to costs and food safety. *Id*. at 22. Soon after, he alleges that the agency denied benefits to him and his wife regarding her medical care, which should have been authorized under agency policy. *Id*. at 23-24. The agency also implemented a new charter for the Germany office, which he describes as enabling the eventual abolition of the appellant's position there. *Id*. at 25.

¶17    In his fourth set of disclosures and reprisal, the appellant described an April 2017 letter to the Secretary of State in which he identified ways in which the agency could save more than a billion dollars per year in Iraq. *Id*. He further described having filed his initial OSC complaint at the same time. *Id*. According to the appellant, he also contacted the agency's OIG once more, this time to express concerns about a particular contract. *Id*. at 26. After these disclosures, the appellant asserted that the agency counseled him about a backlog of invoices, failed to timely complete yet another EER, and conducted an investigation of the Germany office. *Id*. at 26-27.

¶18     In his fifth and final set of disclosures and reprisal, the appellant asserted that he sent another letter to the Secretary of State, in June 2017, this time concerning a culture of corruption and improper efforts to circumvent a hiring freeze. *Id*. at 27. By June 2017, the appellant also asserted that he had informed "all NEA-SCA management, Frankfurt Consulate, and Acquisition Management personnel" that he was a whistleblower and had filed a reprisal claim with OSC. *Id*. at 27-28. Subsequently, in August 2017, the appellant stated that he was removed from the Director position in the Germany office, his tour extension request was denied, his position was abolished, he was involuntarily separated[2] from the agency, and he was denied various benefits. *Id*. at 28-30.

¶19     OSC's May 2020 close-out letter described allegations consistent with those recounted above. IAF, Tab 1 at 30-32. This included ones about the voluntariness of the appellant's separation in 2017, his not being allowed to return to Iraq in 2014, the medical treatment and benefits associated with his wife, and his delayed EERs. *Id*. For all the alleged whistleblowing and reprisal described above, we find that the appellant met the exhaustion element of his jurisdictional burden.

Of the exhausted claims, the appellant nonfrivolously alleged that he engaged in at least some protected whistleblowing that was a contributing factor to at least some personnel actions.

¶20     In addition to exhausting remedies with OSC, to establish Board jurisdiction over an IRA appeal, an appellant must make nonfrivolous[3] allegations that: (1) he made a protected whistleblowing disclosure under 5 U.S.C. § 2302(b)(8) or engaged in protected whistleblowing activity under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the disclosure or activity was a

---

[2] The circumstances surrounding his separation are not entirely clear to us, but the appellant's description suggests that he may have requested curtailment of his tour before later attempting to rescind that request, which the agency denied. *Id*. at 29.

[3] A nonfrivolous allegation is an assertion that, if proven, could establish the matter at issue. 5 C.F.R. § 1201.4(s); *see Hessami v. Merit Systems Protection Board*, 979 F.3d 1362, 1368 (Fed. Cir. 2020).

contributing factor in the agency's decision to take or fail to take, or threaten to take or fail to take, a personnel action as defined by 5 U.S.C. § 2302(a)(2)(A). 5 U.S.C. §§ 1214(a)(3), 1221(e)(1); *Chambers*, 2022 MSPB 8, ¶ 14; *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016); 5 C.F.R. § 1201.57(a)(1), (b), (c). In cases involving multiple alleged protected disclosures and multiple alleged personnel actions, an appellant establishes the Board's jurisdiction over his IRA appeal when he makes a nonfrivolous allegation that at least one alleged personnel action was taken in reprisal for at least one alleged protected disclosure or activity. *Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶ 13; *Baldwin v. Department of Veterans Affairs*, 113 M.S.P.R. 469, ¶ 6 (2010).

¶21    A protected disclosure is one which the employee "reasonably believes evidences: (i) any violation of any law, rule, or regulation, or (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety." 5 U.S.C. § 2302(b)(8). The proper test for determining whether an employee had a reasonable belief that his disclosure was protected is whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the disclosure evidenced one of the circumstances described in 5 U.S.C. § 2302(b)(8). *Cooper v. Department of Veterans Affairs*, 2023 MSPB 24, ¶ 14. The test for protected status is not the truth of the matter disclosed but whether it was reasonably believed. *Id*. Also relevant to the allegations in this appeal, disclosures to an OIG or the OSC are protected under section 2302(b)(9)(C), regardless of content, as long as the disclosure is made in accordance with applicable provisions of law. *Fisher v. Department of the Interior*, 2023 MSPB 11, ¶ 8.

¶22    To satisfy the contributing factor criterion at the jurisdictional stage in an IRA appeal, an appellant need only raise a nonfrivolous allegation that protected whistleblowing was one factor that tended to affect the personnel action in any

way. *Abernathy v. Department of the Army*, 2022 MSPB 37, ¶ 15. One way to establish this criterion is the knowledge/timing test, under which an employee may nonfrivolously allege that the disclosure was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official taking the personnel action knew of the disclosure and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. *Id*. Alternatively, the Board will consider other evidence, such as evidence pertaining to the strength or weakness of the agency's reasons for taking the personnel action, whether the whistleblowing was personally directed at the proposing or deciding officials, and whether these individuals had a desire or motive to retaliate against the appellant. *Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶ 15 (2012).

¶23    The administrative judge found that, even if he assumed that the appellant engaged in protected whistleblowing, the appellant failed to nonfrivolously allege that this was a contributing factor in any covered personnel action. ID at 10. We disagree because the January 2018 letter to OSC, which the administrative judge seemingly did not consider, contained the requisite nonfrivolous allegations supporting some of his claims.

¶24    First, we find that the appellant presented nonfrivolous allegations that his first set of disclosures, i.e., the June 2014 disclosure about jet fuel and the July 2014 disclosures contained in his risk assessment, were protected. *See* IAF, Tab 6 at 16-17. As presented, the appellant has nonfrivolously alleged that these were disclosures of gross mismanagement, a gross waste of funds, and violations of law. *See, e.g.*, *Salazar v. Department of Veterans Affairs*, 2022 MSPB 42, ¶ 24 (defining "gross mismanagement" as more than de minimis wrongdoing or negligence; it is management action or inaction that creates a substantial risk of significant adverse impact on the agency's ability to accomplish its mission); *Lane v. Department of Homeland Security*, 115 M.S.P.R. 342, ¶ 31 (2010)

(explaining that a gross waste of funds is a more than debatable expenditure that is significantly out of proportion to the benefit reasonably expected to accrue to the Government).

¶25    We further find that the appellant nonfrivolously alleged that these disclosures were a contributing factor in some personnel actions. In particular, the appellant seemed to allege that the Iraq Management Counselor responsible for the jet fuel expenditure was the recipient of the appellant's disclosure about the same and bore some responsibility for his changed duty station. IAF, Tab 6 at 17-19. He further asserted that at least two other officials who were recipients of his July 2014 risk assessment, a Contract Specialist and a "Supervisory PMO," were also involved in his changed duty station. *Id*. at 17-18. Next, he alleged that a recipient of his July 2014 risk assessment, the "Supervisory PMO" who served as the appellant's supervisor in Germany, denied him certain overtime pay to which he was entitled.[4] *Id*. at 2, 17, 19. Each of these suffice for purposes of the requisite nonfrivolous allegations of protected disclosures that were a contributing factor in the change of duty stations and denial of overtime pay, which are the covered personnel actions.

¶26    To the extent that the appellant described any other alleged personnel actions that followed his first set of disclosures, we do not find that he met his jurisdictional burden. To illustrate, the appellant described how he was subjected to investigations between June and October 2015, after his first set of disclosures, but we cannot find any allegations linking these to his alleged disclosures. *Id*. at 20. Thus, he has not presented nonfrivolous allegations for the contributing

---

[4] The appellant also appears to argue that his supervisor while the appellant was working in Washington, D.C. was implicated by and a recipient of the July 2014 risk assessment, and then delayed the appellant's EER soon after. IAF, Tab 6 at 17-18. To the extent the appellant is alleging that the agency delayed this EER and/or subsequent EERs in retaliation for his whistleblowing or protected activity, the Board has found that a delay in issuing a performance evaluation is not a "personnel action" within the definition in the statute. *See Reeves v. Department of the Army*, 101 M.S.P.R. 337, ¶¶ 10-11 (2005); *see also* 5 U.S.C. § 2302(a)(2)(A). Thus, we do not further discuss allegations concerning the allegedly delayed EERs.

factor criterion with respect to the same under the knowledge/timing test or *Dorney*. *See supra* ¶ 22.

¶27 Turning to his second set of alleged whistleblowing, we once again find that the appellant presented nonfrivolous allegations. This time, he alleged that he made December 2016 disclosures to the agency's OIG about a waste of funds and mismanagement. IAF, Tab 6 at 21. Regardless of content, this activity is protected under section 2302(b)(9)(C). *See Fisher*, 2023 MSPB 11, ¶ 8.

¶28 According to the appellant, his own management would have inferred that he made these disclosures to OIG after OIG issued its report on the matter because he had previously made the same disclosures directly to management. *Id*. at 21-22. Accordingly, we find that the appellant nonfrivolously alleged that his second set of disclosures, which was protected activity, was a contributing factor in the decision not to extend his tour, soon thereafter. IAF, Tab 6 at 22.

¶29 For his third set of alleged whistleblowing and reprisal, we do not find that the appellant presented the requisite nonfrivolous allegations. *See id*. at 22-25. Specifically, he has not presented nonfrivolous allegations that his alleged whistleblowing was a contributing factor in any covered personnel action.

¶30 To illustrate, much of the reprisal the appellant describes as a result of his third set of disclosures concerned the agency's handling of his wife's medical care. *Id*. at 23-24. But the appellant did not describe any linkage between his alleged whistleblowing and the circumstances surrounding his wife's medical care, except to note that one followed the other. This alleged proximity in time, without allegations of knowledge, does not suffice for purposes of the knowledge/ timing test, and the appellant has not presented nonfrivolous allegations to satisfy his burden through other means, such as the factors delineated in *Dorney*. *See supra* ¶ 22. Separately, the appellant describes how his new supervisor played a role in changing the charter for his Germany office, and how this would ultimately lead to his position being abolished. IAF, Tab 6 at 25. However, it is not apparent from the appellant's descriptions that this new supervisor had any

knowledge of the appellant's alleged whistleblowing for purposes of the knowledge/timing test, and we are again unable to conclude that he met his jurisdictional burden through other means, such as *Dorney* factors. *See supra* ¶ 22. Further, the appellant has not nonfrivolously alleged that the decision to update the Germany office's charter constituted a covered personnel action, since it seemed to have no immediate impact on him. *See* 5 U.S.C. § 2302(a)(2)(A) (defining covered personnel actions as including, among other things, a significant change in duties, responsibilities, or working conditions).

¶31 The appellant's fourth set of alleged disclosures and reprisal are similarly deficient. He describes disclosures to the Secretary of State, his initial OSC complaint, and more disclosures to OIG. IAF, Tab 6 at 25-26. But the appellant has again presented no allegations linking this to the resulting reprisal he alleged —a counseling session from his supervisor and an investigation about some of the Germany office's practices. *Id*. at 26-27. Once more, the proximity in time between the alleged disclosure and the alleged reprisal, without more, does not constitute nonfrivolous allegations of the contributing factor criterion under either the knowledge/timing test or *Dorney*. *See supra*, ¶ 22.

¶32 Turning to the appellant's fifth set of alleged whistleblowing and resulting reprisal, we find that the appellant did present sufficient nonfrivolous allegations. The appellant nonfrivolously alleged that he engaged in protected activity by making disclosures to OIG and by filing his initial OSC complaint. IAF, Tab 6 at 27-28; *see Fisher*, 2023 MSPB 11, ¶ 8. He asserted that, by June 2017, he had advised "all NEA-SCA management, Frankfurt Consulate, and Acquisition Management personnel in writing, face to face or telephonically that he was a [w]histleblower and had filed an OSC case." *Id*. at 27-28. Further, the appellant alleged that he was removed from the Director position in Germany and his tour extension request was denied less than two months later. *Id*. at 28. Accordingly, for those alleged personnel actions, we find that the appellant nonfrivolously

alleged that his OIG and OSC activity was a contributing factor through the knowledge/timing test. *See supra* ¶ 22.

<u>On remand, the administrative judge should address each of the claims within the Board's jurisdiction, while being mindful of section 2302(f)(2).</u>

¶33      On remand, the administrative judge may adjudicate this appeal in the order he deems most efficient, and our conclusion that the appellant has presented nonfrivolous allegations regarding the existence of at least some protected whistleblowing that was a contributing factor in at least one covered personnel action in no way disposes of the merits of those issues or any others. While adjudicating the case further, the administrative judge should be mindful of whether any of the appellant's alleged disclosures were made in the normal course of his duties.

¶34      Pursuant to 5 U.S.C. § 2302(f)(2), an appellant who makes a disclosure in the normal course of his duties must additionally show that the agency took the action "in reprisal for" his disclosure, and it thereby imposes a slightly higher burden for proving that the disclosure was protected. *Salazar*, 2022 MSPB 42, ¶ 11. The National Defense Authorization Act for Fiscal Year 2018 amended 5 U.S.C. § 2302(f)(2) to provide that it only applies to employees whose principal job functions are to regularly investigate and disclose wrongdoing and that the amendment is entitled to retroactive effect. *Id.*, ¶¶ 13-21. The potential applicability of 5 U.S.C. § 2302(f)(2) is not part of the jurisdictional analysis in an IRA appeal and should instead be considered at the merits stage. *Williams v. Department of Defense*, 2023 MSPB 23, ¶ 12.

<u>On remand, the appellant will bear the initial burden of proof.</u>

¶35      At the merits stage of this IRA appeal, the appellant must prove by preponderant evidence that he made a protected disclosure under 5 U.S.C. § 2302(b)(8), or engaged in an activity protected by 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D), and that such disclosure or activity was a contributing factor in an agency's personnel action. *Turner v. Department of*

*Agriculture*, 2023 MSPB 25, ¶ 12. If the appellant meets that burden, the agency is given an opportunity to prove by clear and convincing evidence that it would have taken the same personnel action absent the protected disclosure or activity. *Id*.

¶36    As alluded to in this decision and the initial decision, the appellant's pleadings to date have been difficult to understand. While we are cognizant of his pro se status, a party whose submissions lack clarity risks being found to have failed to meet his burden of proof. *Luecht v. Department of the Navy*, 87 M.S.P.R. 297, ¶ 8 (2000). Further, it is not the Board's obligation to pore through the record or to construe and make sense of allegations based on various parts of a case file.[5] *Keefer v. Department of Agriculture*, 92 M.S.P.R. 476, ¶ 18 n.2 (2002). Accordingly, the appellant is encouraged to carefully follow the administrative judge's instructions. The appellant is also encouraged to ensure that the arguments and evidence he presents are clear, succinct, and easily understood. This is particularly important in a case such as this, where the appellant has alleged many instances of whistleblowing and many more instances of retaliation.

---

[5] In submitting evidence and argument on remand, the appellant should be aware that it is not the Board's role to investigate allegations of mismanagement or a waste of funds by another Federal agency. 5 U.S.C. §1204; *Bush v. Office of Personnel Management*, 91 M.S.P.R. 415, ¶ 11 (2002). As described above, the Board's focus in an IRA appeal, such as this one, is whether the agency retaliated because of the appellant's protected disclosures and activities.

**ORDER**

¶37     For the reasons discussed above, we remand this case to the regional office for further adjudication in accordance with this Remand Order.

FOR THE BOARD:       *Gina K. Grippando*
_____
                           Gina K. Grippando
                           Clerk of the Board

Washington, D.C.